# United States Court of Appeals for the Federal Circuit

2008-7081

JOHN R. HOLTON, JR.,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

2008-7088

DENVER M. BRYANT,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas argued for both claimants-appellants in appeals 2008-7018 and 2008-7088.

Meredyth Cohen Havasy, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee in appeal 2008-7081. On the brief were Jeanne E. Davidson, Director, Martin F. Hockey, Jr., Assistant Director, and Allison Kidd-Miller, Trial Attorney. Of counsel were David J. Barrans, Deputy Assistant General Counsel, and Amanda R. Blackmon, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Scott D. Austin, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee in appeal 2008-7088. With him on the brief were, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel were David J. Barrans, Deputy Assistant General Counsel, and Tracey P. Warren, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge William A. Moorman
Judge Robert N. Davis

# United States Court of Appeals for the Federal Circuit

2008-7081

JOHN R. HOLTON, JR.,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

2008-7088

DENVER M. BRYANT,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeals from the United States Court of Appeals for Veterans Claims in 05-3493, Judge William A. Moorman, and 06-0211, Judge Robert N. Davis.

_____

DECIDED: March 5, 2009

_____

Before BRYSON, LINN, and PROST, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

I

John R. Holton, Jr., and Denver M. Bryant appeal the decisions of the Court of Appeals for Veterans Claims ("Veterans Court") denying their respective claims for disability compensation. Because the appellants put forth similar arguments that require us to clarify the elements that a veteran must satisfy to receive disability compensation, we address their appeals together. We affirm in both cases.

A

Mr. Holton served on active duty in the U.S. Coast Guard from July 1968 to July 1972. In February 2002, Mr. Holton filed a claim with the Department of Veterans Affairs ("DVA") seeking disability compensation for a pelvis fracture. His entrance examination, service medical records, and separation examination showed no evidence of an injury to his pelvis. Several years after his separation from the service, however, Mr. Holton began to experience pain in his right hip and buttocks, and an X-ray performed in 2002 at a DVA medical facility showed an avulsion fracture on Mr. Holton's right inferior pubic ramus. Mr. Holton claimed that the fracture was the result of his slipping and falling on slick metal stairs while he was working in ships' engine rooms during his service 30 years earlier.

In June 2002, a DVA regional office denied Mr. Holton's claim on the ground that his service medical records did not reflect that he was diagnosed with or treated for any bone injury during service. Mr. Holton appealed that decision to the Board of Veterans' Appeals. Along with his appeal, Mr. Holton submitted a statement from another veteran who served with him aboard a Coast Guard icebreaker. According to the other veteran's statement, the ship was frequently in rough seas and its ladders were often

slippery. The other veteran therefore concluded that it was "highly likely" that Mr. Holton sustained injuries while serving aboard the ship. The other veteran did not claim to have seen Mr. Holton fall, nor did he claim any specific knowledge of any injury that Mr. Holton sustained in service. The Board found that Mr. Holton had failed to put forth objective evidence that he incurred any fracture-causing injury while in service, and it therefore rejected his claim for compensation.

On the parties' joint motion, the Veterans Court remanded for a medical nexus opinion by an orthopedic specialist as to the likelihood that any existing pelvis fracture was causally related to Mr. Holton's falls during service. A DVA physician examined Mr. Holton in 2005 and found evidence of calcific myositis but no evidence of any fracture of the pubic ramus. The examining physician noted that Mr. Holton had stated that he had received his first diagnosis of a pelvis fracture in 2000 and that he had experienced pain in his hip for the previous seven or eight years. The examiner concluded that "[i]t would be speculative at best to say that the pubic fracture is one caused from service activity or fracture in as much as the time frame here is something of the order of 25-30 years." The regional office again denied Mr. Holton's claim for compensation, and the Board again affirmed, finding that the record did not include "even a scintilla" of competent medical evidence showing a nexus between any current disability of the pelvis and the falls Mr. Holton sustained during active service.

B

Mr. Bryant served on active duty in the U.S. Army from September 1943 to October 1947, and from January 1948 to June 1963. In September 1962, Mr. Bryant was examined at a military hospital in Canada after complaining of eye irritation and

seeing halos around lights. The examination was negative except for a tonometer measurement showing increased intra-ocular pressure in both eyes. The examiner reported at the time that there was "some indication" that the tonometer was defective, but because no other tonometer was available to confirm the pressure reading, Mr. Bryant was diagnosed with acute glaucoma and given a prescription for anti-glaucoma medication. In a follow-up examination conducted a week later, the examining physician concluded that the first tonometer reading was erroneous and that Mr. Bryant did not have glaucoma. No evidence of glaucoma was reported in a December 1962 eye examination, in Mr. Bryant's 1963 separation examination, or in post-service medical examinations conducted over the next two decades. In 1990, however, a DVA ophthalmologist diagnosed Mr. Bryant with uncontrolled open-angle glaucoma.

In 1996 Mr. Bryant filed a claim for disability compensation for glaucoma. Mr. Bryant contended that he had incurred glaucoma during service, as evidenced by the September 1962 diagnosis, and that his current condition was related to that in-service incurrence of the disease. A DVA regional office concluded that Mr. Bryant did not incur glaucoma during service and therefore denied his claim for compensation. Mr. Bryant appealed that decision to the Board, which in a 1998 decision affirmed the regional office's denial of his claim. The Board found that the only in-service evidence of glaucoma resulted from a defective tonometer measurement and concluded that no medical evidence linked his current condition to his military service.

The Veterans Court vacated the Board's decision and remanded because, among other things, the DVA had failed to provide Mr. Bryant with a medical examination directed at determining the relationship between Mr. Bryant's glaucoma

and his military service.  Mr. Bryant received an ophthalmologic examination in 2003.  The examining physician concluded that Mr. Bryant's glaucoma did not result from any disease incurred during service because post-service medical examinations showed normal intra-ocular pressures and no indication of any abnormalities of the optic nerves.

The Board then denied Mr. Bryant's claim for disability compensation for glaucoma.  The Board found that Mr. Bryant's 1962 glaucoma diagnosis resulted from a faulty tonometer reading because the contemporaneous follow-up examination and the 2003 medical opinion ruled out any in-service glaucoma.  The Board concluded:

> In the absence of any objective medical opinion of record linking the veteran's current glaucoma to military service or any incident thereof, the Board finds that the glaucoma first definitively diagnosed over 27 years post service is clearly of post-service origin, and is unrelated to military service or any incident thereof, and that the preponderance of the evidence is thus against the claim for service connection for glaucoma.

Mr. Holton and Mr. Bryant appealed to the Veterans Court and argued that the Board either misinterpreted or failed to apply 38 U.S.C. §§ 105(a) and 1111.  The Veterans Court affirmed the Board's denial of compensation in both cases.  Mr. Holton and Mr. Bryant now appeal to this court.

II

Veterans are entitled to compensation from the DVA if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty."  38 U.S.C. §§ 1110 (wartime service), 1131 (peacetime service).  To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or

aggravated during service"—the so-called "nexus" requirement. <u>Shedden v. Principi</u>, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Several statutory presumptions operate in connection with sections 1110 and 1131, and the appellants invoke two such provisions in these appeals, 38 U.S.C. § 105(a) and 38 U.S.C. § 1111.

A

Section 105(a) states in relevant part:

> An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs.

By its plain terms, section 105(a) creates a presumption that an injury or disease incurred by a veteran during active service was incurred in the line of duty and not caused by the veteran's misconduct. There are two important components to this "line-of-duty presumption." First, section 105(a) makes clear that an injury or disease will be deemed to have been incurred in the line of duty if it occurred at almost any time during a veteran's active service—even during authorized leave. Thus, a veteran need not show that his injury occurred while he was performing service-related duties or acting within the course and scope of his employment in order to receive disability benefits; for purposes of disability compensation, a service member's workday never ends.

Second, section 105(a) creates a presumption that a veteran's in-service injury or disease did not result from his own misconduct. Sections 1110 and 1131 require that a veteran's injury or disease occur in the "line of duty" in order to be eligible for disability compensation, and section 105(a) defines "line of duty" as used in those provisions to mean an injury that occurs during active service and is not caused by the service

member's own misconduct.  See Allen v. Principi, 237 F.3d 1368, 1377 (Fed. Cir. 2001).  Section 105(a) therefore "deals with the situation where there is a question whether the in-service medical condition was incurred in 'line of duty' or outside such duty because it resulted from the veteran's own misconduct."  Dye v. Mansfield, 504 F.3d 1289, 1292 (Fed. Cir. 2007).

The effect of the line-of-duty presumption on claims for disability compensation can be summarized as follows:  If a veteran shows that he suffered an injury or contracted a disease during active military service, that injury or disease will be presumed under section 105(a) to have occurred in the line of duty.  That presumption can be rebutted only if the government shows that the injury or disease was caused by the veteran's own willful misconduct or abuse of alcohol or drugs.  See Thomas v. Nicholson, 423 F.3d 1279, 1284-85 (Fed. Cir. 2005).  Thus, if the veteran establishes that he was injured or contracted a disease during active service and the government does not show that the injury or disease resulted from willful misconduct, the veteran has satisfied the second of the three elements of a compensation claim—that a disease or injury was incurred in service.  See Conley v. Peake, 543 F.3d 1301, 1305 (Fed. Cir. 2008).

To be eligible for disability compensation, however, it is not enough for a veteran to show that he incurred a disease or injury while in service; he must also show that he has a present disability and that there is a nexus between that disability and his in-service injury or disease.  Shedden, 381 F.3d at 1167.  While the section 105(a) presumption establishes that an injury or disease that was incurred during service was incurred in the line of duty, it is irrelevant to the question whether that in-service injury or

disease is causally related to the veteran's current disability.  See Dye v. Mansfield, 504 F.3d at 1292.

B

Veterans seeking disability compensation under either section 1110 or section 1131 also receive the benefit of a second statutory presumption, the "presumption of sound condition."  That presumption dictates that a veteran shall be presumed to have been in sound condition when entering the service, except as to disorders noted at that time.  38 U.S.C. §§ 1111 (wartime service), 1132 (peacetime service).  The wartime presumption of soundness, which Mr. Holton invokes in his appeal, can be overcome "where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service."  Id. § 1111; see Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004).  As we recently made clear, the presumption of soundness "addresses the situation where a question arises whether a veteran's medical problems that arose during service existed before he joined the armed forces and, therefore, were not incurred 'in line of duty'" for purposes of disability compensation under section 1110.  Dye, 504 F.3d at 1293.  Conversely, section 1111 is not pertinent where there is no question whether a disease or injury existed before the veteran's entry into the service or whether a preexisting condition was aggravated in service.

Like the line-of-duty presumption in section 105(a), the presumption of soundness relates to the second element required to establish a right to disability compensation—the showing of in-service incurrence or aggravation of a disease or injury.  Dye, 504 F.3d at 1292.  The presumption of soundness therefore does not

relieve the veteran of the obligation to show the presence of a current disability and to demonstrate a nexus between that disability and the in-service injury or disease or aggravation thereof. Nor does the presumption of soundness relieve the veteran of the burden of showing that the veteran suffered from a disease or injury while in service.

III

In light of the interpretations of sections 105(a) and 1111 outlined above, we sustain the decisions of the Veterans Court with respect to both Mr. Holton's and Mr. Bryant's claims for disability compensation. As we explain below, both appellants misinterpret those statutory presumptions and how they operate in connection with the three elements that a veteran must prove to receive compensation.

A

Mr. Holton contends that the Veterans Court denied his claim for disability compensation for a pelvis injury without properly applying the presumptions afforded by sections 105(a) and 1111. With respect to section 105(a), the Veterans Court explained that while Mr. Holton offered evidence that he suffered some injury during his service, the record before the Board did not include "even a scintilla of competent evidence relating any current disability of the pelvis . . . to the alleged remote injury in service." The Board therefore denied Mr. Holton's claim for disability compensation because it concluded that he had failed to show a nexus between his present disability and the injury he suffered during his military service. In light of that finding, the Veterans Court held that the Board did not err in declining to apply section 105(a)'s line-of-duty presumption.

Mr. Holton asserts that he was entitled to the benefit of the line-of-duty presumption in section 105(a) even in the absence of evidence that his present disability is causally related to his in-service injury. But that is precisely the argument we rejected in Shedden and Dye. In Shedden we held:

> [W]hile section 105(a) establishes a presumption that the disease or injury incurred during active duty is service-connected, the veteran seeking compensation must still show the existence of a present disability and that there is a causal relationship between the present disability and the injury, disease, or aggravation of a preexisting injury or disease incurred during active duty.

Shedden, 381 F.3d at 1167. We explicitly reiterated that holding in Dye and clarified that if a claimant does not show "'a causal relationship' between his in-service and post-service medical problems," the section 105(a) presumption "cannot fill that gap and, therefore, is irrelevant." Dye, 504 F.3d at 1292. The inescapable lesson of our decisions in Shedden and Dye is that Mr. Holton cannot invoke the line-of-duty presumption as a substitute for evidence showing a nexus between his current disability and any injury he sustained during service.

Mr. Holton contends that because the Board reached the nexus issue without applying section 105(a), he was denied the benefit of the DVA's duty to assist him to develop facts pertinent to his claim by obtaining the necessary medical nexus opinion. As the Board noted, the DVA obtained Mr. Holton's medical service records and provided Mr. Holton with a medical nexus opinion from an orthopedist. Mr. Holton argues, however, that the medical nexus opinion he received was tainted by the DVA's failure to apply the section 105(a) presumption before addressing the question of nexus. According to Mr. Holton, the physician who conducted his medical examination should have been instructed by the Board to presume that he suffered an in-service pelvis

2008-7081, -7088                    10

injury and asked to express his opinion only as to whether his current disability was related to that presumed injury. That argument is without merit. The DVA is generally obligated to provide a veteran seeking disability compensation with a medical examination. 38 U.S.C. § 5103A; see Disabled Am. Veterans v. Sec'y of Veterans Affairs, 419 F.3d 1317, 1318-19 (Fed. Cir. 2005) (noting that the DVA is "generally required" to make reasonable efforts to provide medical examinations); see also DeLaRosa v. Peake, 515 F.3d 1319, 1322 (Fed. Cir. 2008) (holding that section 5103A does not invariably require the DVA to obtain a medical opinion). But Mr. Bryant cites no authority for the proposition that section 105(a) compels the examining physician to presume the existence of an asserted in-service injury when providing a medical nexus opinion. Section 105(a) is simply irrelevant to the nexus inquiry. We therefore affirm the decision of the Veterans Court that the Board did not err in declining to apply the line-of-duty presumption.

Mr. Holton also argues that the Veterans Court misinterpreted section 1111 in holding that the presumption of soundness was not relevant to his claim. As we explained above, however, the presumption of soundness is relevant only where there is a question whether the asserted in-service injury or disease pre-existed the veteran's entry into service. See Dye, 504 F.3d at 1293. There was never any dispute that Mr. Holton was in sound condition when he entered the service. Rather, the Board denied Mr. Holton's claim for disability compensation because it concluded there was no medical evidence relating his current disability to his military service. The presumption of soundness is not pertinent to that inquiry.

Mr. Holton asserts that the Veterans Court nonetheless failed to appreciate the "symbiotic" relationship between the presumptions afforded by sections 105(a) and 1111. According to Mr. Holton, section 1111 was triggered because his entrance examination showed no evidence of any pre-existing injury. Moreover, because the government failed to rebut the presumption of soundness with clear and unmistakable evidence, Mr. Holton argues that he was entitled to the benefit of section 105(a)'s presumption that his injury was incurred in the line of duty. As explained above, however, the line-of-duty presumption—like the presumption of soundness—cannot be used to show a nexus between a veteran's current disability and his military service. Thus, even when combined, sections 105(a) and 1111 do not compensate for Mr. Holton's failure to demonstrate that his pelvis injury, which was first diagnosed 30 years after his separation from service, is causally related to any in-service injury he suffered.

B

Mr. Bryant contends that the Veterans Court misinterpreted section 105(a) and therefore erred in denying his claim for disability compensation for glaucoma. The Board found that Mr. Bryant's in-service diagnosis of glaucoma resulted from an erroneous tonometer measurement and that Mr. Bryant therefore failed to point to any objective evidence linking his current glaucoma to his military service. The Veterans Court affirmed, concluding that the Board did not err in failing to apply section 105(a), because there was no question in the case as to whether Mr. Bryant's glaucoma stemmed from misconduct during service.

The nub of Mr. Bryant's argument is that his 1962 diagnosis of glaucoma constituted affirmative evidence of an in-service disease. That evidence, he contends,

triggered the presumption of section 105(a) and placed the burden on the government to rebut the evidence that he incurred the disease in the line of duty. According to Mr. Bryant, the government failed to rebut that evidence, and he is therefore entitled to a presumption of "service connection" for his glaucoma under section 105(a). However, Mr. Bryant labors under an erroneous interpretation of section 105(a), and his reliance on that provision is therefore misplaced.

As we have explained, section 105(a) creates a presumption that an injury or disease incurred during service was incurred in the line of duty and did not result from the veteran's own misconduct. It does not create a presumption of injury. In order to receive disability compensation, a veteran must show that it was at least as likely as not that he suffered an injury or contracted a disease while in service. <u>See</u> 38 U.S.C. § 5107(b); Barton F. Stichman & Ronald B. Abrams, <u>Veterans Benefits Manual</u> § 3.3 (2008). Nothing in section 105(a) bears on that requirement. If a veteran makes such a showing, he will be entitled to the presumption under section 105(a) that the injury or disease occurred in the line of duty. But section 105(a) does not relieve the veteran of his obligation to show that he incurred a disease or injury during active service in the first place.

Mr. Bryant contends that it is enough for a veteran to put forth <u>some</u> evidence of an in-service injury or disease—no matter how little or how credible—to trigger section 105(a) and to satisfy the requirement that he incurred or aggravated the disease or injury in service. That is not correct. This court rejected a similar argument in <u>Madden v. Gober</u>, 125 F.3d 1477 (Fed. Cir. 1997). In that case, a veteran sought compensation for a psychiatric disorder and invoked 38 U.S.C. § 1112, which provides that certain

chronic diseases that manifest themselves within one year after a veteran's separation from military service shall be presumed to have been incurred during service. The Veterans Court concluded that the claimant failed to show that his disorder became manifest within the one-year presumptive period and therefore rejected his claim. The veteran appealed to this court, arguing that "<u>any</u> evidence submitted by the veteran showing manifestation of the claimed disability within the prescribed time is sufficient to gain the presumption of service connection," regardless of its reliability or credibility. <u>Madden</u>, 125 F.3d at 1480 (emphasis in original). We rejected that argument and held that the Board was obligated to evaluate the weight of the evidence that the veteran's symptoms manifested within a year after his separation from the service. <u>Id.</u> at 1481.

Although <u>Madden</u> dealt with section 1112 (which is not at issue in this case), the same principle applies here. The DVA is required to reject a disability claim if the claimant fails to put forth sufficient evidence showing that he suffered an injury or incurred a disease during service. Indeed, we applied that very principle in <u>Shedden</u>, in which we affirmed a judgment denying a veteran's claim of clear and unmistakable error on the ground that "there was no showing of a psychiatric condition incurred in active service that could give rise to the section 105(a) presumption." <u>Shedden</u>, 381 F.3d at 1167. Section 105(a) cannot serve as a substitute for affirmative evidence that a veteran incurred an injury or disease during service.

In addition to finding the absence of evidence of an in-service disease, the Board found that Mr. Bryant's glaucoma is "unrelated to military service or any incident thereof." Mr. Bryant contends that section 105(a) creates not just a presumption of in-service injury, but also a presumption of nexus. As discussed with respect to Mr.

Holton, our decisions <u>Shedden</u> and <u>Dye</u> explicitly reject the argument that section 105(a) creates a presumption of nexus.[1]  On that ground as well, we affirm the Veterans Court's denial of Mr. Bryant's claim for disability compensation for glaucoma.

IV

Mr. Holton and Mr. Bryant were denied disability compensation because each failed to satisfy at least one of the requirements necessary to receive benefits.  Mr. Holton's claim was rejected because he did not demonstrate that his pelvis fracture was causally related to his military service.  The Veterans Court correctly concluded that neither section 105(a) nor section 1111 can fill that evidentiary gap.  Mr. Bryant's claim was rejected because he did not show that he incurred glaucoma during active service or that his current glaucoma is causally related to his military service.  The Veterans Court correctly concluded that the section 105(a) presumption did not apply to those two requirements.  We agree with the court's analysis and therefore affirm the court's decisions in both cases.

Each party shall bear its own costs for these appeals.

<u>AFFIRMED</u>.

---

[1]    Mr. Bryant cites our recent decision in <u>Groves v. Peake</u>, 524 F.3d 1306 (Fed. Cir. 2008), for the proposition that he is not required to demonstrate a nexus between his current glaucoma and his military service.  <u>Groves</u>, however, involved an application of 38 C.F.R § 3.303(b), which provides a presumption of service connection for a "chronic disease shown as such in service (or within the presumptive period under § 3.307)" that manifests again "at any later date, however remote."  <u>See</u> 38 C.F.R. § 3.303(b); <u>Groves</u>, 524 F.3d at 1309-10.  Glaucoma is not among the chronic diseases that are subject to presumptive service connection under 38 C.F.R. § 3.309(a), and unlike Mr. Groves, Mr. Bryant failed to demonstrate that he incurred his present condition while in service.  The regulations pertaining to chronic diseases therefore do not relieve Mr. Bryant of his obligation to demonstrate a medical nexus in order to receive disability compensation for his glaucoma.