Citation Nr: 1452659 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 08-25 715 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for sleep apnea, to include as secondary to service connected kidney disease. 

2. Entitlement to service connection for diabetes mellitus. 

3. Entitlement to service connection for peripheral neuropathy of the right upper extremity. 

4. Entitlement to service connection for peripheral neuropathy of the left upper extremity. 

5. Entitlement to service connection for peripheral neuropathy of the right lower extremity. 

6. Entitlement to service connection for peripheral neuropathy of the left lower extremity. 


REPRESENTATION

Appellant represented by: Alabama Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

James G. Reinhart, Counsel


INTRODUCTION

The Veteran served on active duty from April 1960 to July 1968 and from October 1978 to December 1991. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a September 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. The RO is the Agency of Original Jurisdiction (AOJ). 

In September 2013, the Veteran testified via videoconference at a hearing before the undersigned. A transcript of that hearing is of record. 

In December 2013, the Board remanded this appeal to the AOJ for additional development. Also before the Board at that time were issues of entitlement to service connection for gout and a cervical spine disability. In a September 2014 rating decision, the AOJ granted service connection for gout and the cervical spine disability, thus resolving the appeal as to those issues. 

The issues of entitlement to service connection for peripheral neuropathy of the upper and lower extremities and sleep apnea are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. The Veteran is presumed to have been exposed to an herbicide agent, such as Agent Orange, during his active service at the Royal Thai Air Base at Ubon, Thailand. 

2. The Veteran has diabetes mellitus. 


CONCLUSION OF LAW

The criteria for service connection for diabetes mellitus have all been met. 38 U.S.C.A. §§ 1110, 1116, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Due Process

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See eg. 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2014) and 38 C.F.R. § 3.159 (2014). As the claim for service connection for diabetes mellitus is being granted, any error involving notice or assistance as to the diabetes mellitus claim need not be discussed as, at this point, such error cannot have resulted in prejudice to the Veteran. 



Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2014). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be granted for a condition on a "secondary" theory of entitlement if the condition is shown to have been caused or aggravated by a condition for which service connection has already been established. See 38 C.F.R. § 3.310 (2014). The term "aggravated" in this context means that, although the secondary condition was not caused by the service-connected condition, the secondary condition was worsened by the service-connected condition. 

If a veteran was exposed to a dioxin herbicide agent, such as contained in Agent Orange, during active service, certain specific diseases shall be service connected, if the requirements of, even if there is no record of such disease during service. 38 U.S.C.A. § 1116(f) (West 2002); 38 C.F.R. §§ 3.307(a)(6), 3.307(e) (2014). Diabetes mellitus is one such disease. 38 C.F.R. § 3.307(e) (2014). 

VA shall consider all information and lay and medical evidence of record and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b) (West 2002). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. 38 C.F.R. § 3.102 (2014). The benefit of the doubt rule does not apply when the unfavorable and favorable evidence is not approximately evenly balanced, or, to state it another way, in equipoise. Id.

Veterans who served in the Republic of Vietnam during certain years as well as Veterans who served in units that operated in or near the Korean demilitarized zone during certain years are presumed to have been exposed to a dioxin herbicide agent. 38 C.F.R. § 3.307(a)(6)(iii). 

During the September 2013 hearing, the Veteran testified that he did not ever set foot in Vietnam. There is no evidence suggesting that he served in Korea. He testified that he was stationed at the Royal Thai Air Base at Ubon, Thailand from January through March 1967. Of record is a January 1967 temporary duty order documenting that the Veteran was assigned to Ubon Royal Thai Air Force Base, Thailand in a maintenance role. The Board thus finds that the Veteran served at this military base beginning in January 1967. 

As for herbicide use in Thailand, VA has established a procedure for verifying exposure to herbicides in Thailand during the Vietnam Era. See the VA Adjudication Manual, M21-1MR, Part IV, Subpart ii, Chapter 2, Section C (M21-1MR); Compensation and Pension Bulletin, May 2010. VA has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand for the purpose of eliminating vegetation and ground cover for base security purposes as evidenced in a declassified Vietnam era Department of Defense document titled, "Project CHECO Southeast Asia Report: Base Defense in Thailand." Id. Special consideration of herbicide exposure on a facts-found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. Id. This allows for presumptive service connection of the diseases associated with herbicide exposure. Id. 

It was noted that the majority of troops in Thailand during the Vietnam era were stationed at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. Id. If a Veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by MOS (military occupational specialty), performance evaluations, or other credible evidence, then herbicide exposure should be acknowledged on a facts found or direct basis. Id. This applies to Veterans who served during the Vietnam era, which spans from February 28, 1961 to May 7, 1975. Id.

Added to the record is a September 2014 Memorandum for the Record on the subject of Herbicide use in Thailand during the Vietnam Era. The memorandum indicates that persons who were regularly near the perimeters at the air base at Ubon, Thailand have an increased likelihood of being exposed to herbicides. Although the document appears to distinguish commercial from tactical herbicides, it also advises that being near the perimeter of the air bases should be considered when evaluating claims based on herbicide exposure. The Board finds that the document, taken as a whole, is favorable to a finding that the Veteran was exposed to an herbicide agent for which the presumption of service connection for diabetes mellitus applies. 

During the September 2013 hearing, the Veteran testified that perimeter fence at the Ubon base was within six feet of the back door of his barracks. He also testified that the trailer that he worked out of was at the end of the runway and the perimeter fence was also at the end of the runway. 

The requested development did not yield any conclusive results as to whether the Veteran was or was not exposed to an herbicide agent during his service at Ubon Air Base. Nor did it yield any persuasive results that he was or was not near the perimeter fence. As such, the Board has only the Veteran's reports of his service at Ubon Air Base to make a determination in this case. The Veteran's testimony is credible. For example, when asked if he remembers defoliation, a recollection that conceivably could have helped his claim, he replied that he did not. This tends to show that what the Veteran did report he is sure of and that he provided only evidence consistent with his memory. As such, the Board finds that the Veteran served near the perimeter at Ubon Air Base. As the DoD letter indicates that those who served near the perimeter may have been exposed to an herbicide agent, the Board resolves reasonable doubt in favor of the Veteran and concludes that he was exposed to an herbicide agent during his service at Ubon Air Base. 

The Board thus resolves reasonable doubt in the Veteran's favor and finds that he was exposed to an herbicide containing dioxin during his active service. Service connection for diabetes mellitus is presumed and the appeal as to entitlement to service connection for diabetes mellitus must be granted. 


ORDER

Service connection for diabetes mellitus is granted. 


REMAND

In the December 2013 Remand, the Board directed the AOJ to ensure that the Veteran was scheduled for an examination with regard to his peripheral neuropathy. The Board directed that the examiner must identify whether the Veteran had peripheral neuropathy of each or any extremity at any time since or contemporaneous to when he filed his claim for benefits in January 2006. The Board directed that the examiner must identify each extremity affected. This was not accomplished. The Veteran has a right as a matter of law, to compliance with the Board's Remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

The Veteran was examined in August 2014. There are several reports of examination, documented in Disability Benefits Questionnaires (DBQs). These questionnaires are titled as (1) Non-degenerative Arthritis and Dysbaric Osteonecrosis, (2) Sleep apnea. (3) Neck Conditions, (4) Knee and Lower Leg Conditions and (5) Medical Opinion. 

Although there are sensory and reflex findings in the Neck Conditions DBQ none of these DBQs directly address whether the Veteran has peripheral neuropathy of any extremity. 

A September 2014 VA medical opinion provides that "it is as least as likely as not that DM [diabetes mellitus] is nexus to and caused upper and lower peripheral neuropathy." The opinion is convoluted in that it then refers to the Veteran's melanoma and cervical spine disability and the last sentence of the opinion is "it would be mere speculation to assume the diagnosis and clinical symptomatology without additional medically based, clinical evidence to support the Veteran's claimed peripheral neuropathy and detailed information on the multiple therapies related to Melanoma treatment." 

This opinion clearly indicates that if the Veteran has peripheral neuropathy, then it is due to his diabetes mellitus. However, the opinion leads the Board to the conclusion that it is unclear whether he has peripheral neuropathy. 

During the hearing before the undersigned, the Veteran reported that he has tingling or burning in his hands and that has numbness of his left leg but not his right leg. He also denied tingling or burning in his feet. 

At this point, the Board has insufficient evidence to determine whether the Veteran has peripheral neuropathy of any of the extremities and, if he does have peripheral neuropathy of any of his extremities, the evidence is insufficient to determine of which extremities. The Board cannot therefore adjudicate the appeal as to service connection for peripheral neuropathy. A remand is necessary to afford the Veteran the examination with regard to his peripheral neuropathy that the Board previously remanded those issues to obtain. 

With respect to the claim for service connection for sleep apnea, in light of the Board's grant of the claim for service connection for diabetes mellitus, and the lack of any opinion regarding a possible relationship between diabetes and his sleep apnea, the Board finds that this issue must also be remanded for another opinion. Moreover, in light of the fact that the most recent opinion emphasized the lack of medical literature supporting any association between hypertension, kidney disease, and sleep apnea, and the Veteran's assertion that a physician advised him that there was such supporting literature, the Board finds that the Veteran's claim should be reviewed by a new examiner, who should squarely address any medical literature that acknowledges any causal connection between hypertension, kidney disease, or diabetes mellitus and sleep apnea in the process of rendering an opinion as to whether these conditions caused or aggravated his sleep apnea.

Accordingly, the case is REMANDED for the following action:

1. Ensure that the Veteran is scheduled for a compensation and pension examination to determine whether he has had peripheral neuropathy of any extremity at any time from contemporaneous to when he filed his claim for benefits in January 2006 until the present. The examiner must explicitly identify the extremities, if any, of which the Veteran has peripheral neuropathy. The examiner must provide an explanation as to why he or she determines that the Veteran has or has not had peripheral neuropathy of the left lower extremity, the right lower extremity, the left upper extremity, and the right upper extremity. All necessary testing must be accomplished. 

2. Ensure that the Veteran is scheduled for an examination by an appropriate examiner who has not yet examined the Veteran to determine whether sleep apnea was caused or aggravated by his hypertension, kidney disease, or newly service-connected diabetes mellitus. All necessary testing must be accomplished, and the examiner is requested to accomplish the following:

Provide an expert opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's sleep apnea was caused or aggravated by his service-connected hypertension, kidney disease, and/or diabetes mellitus. In doing so, the examiner is requested to specifically address any medical literature that acknowledges any causal connection between hypertension, kidney disease, or diabetes mellitus and sleep apnea.

3. The AOJ must ensure that the development directed above is completed. 

4. Then readjudicate the claims of entitlement to service connection for peripheral neuropathy of the left lower extremity, the right lower extremity, the left upper extremity, the right upper extremity, and sleep apnea. If any benefit sought is not granted, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate opportunity to respond thereto before returning the case to the Board, if in order. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States 

Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
Michael J. Skaltsounis 
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs