﻿Citation Nr: AXXXXXXXX
Decision Date: 01/22/19 Archive Date: 01/22/19

DOCKET NO. 181025-733
DATE: January 22, 2019

ORDER

Entitlement to service connection for obstructive sleep apnea is granted.

FINDING OF FACT

With resolution of doubt in the Veteran’s favor, obstructive sleep apnea had onset during service. 

CONCLUSION OF LAW

The criteria for service connection for obstructive sleep apnea are met. 38 U.S.C. §§ 1131 (2012); 38 C.F.R. § 3.303 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from August 1976 to August 1979. 

The Veteran selected the Supplemental Claim lane when he submitted the RAMP election form in May 2018. Accordingly, the July 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the July 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for obstructive sleep apnea. The Board is bound by this favorable finding. See AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

Entitlement to service connection for obstructive sleep apnea

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2018). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called “nexus” requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2018).

 

In a statement submitted with his claim in December 2017, the Veteran alleged that sleep apnea began during service and has existed since that time. 

In the July 2018 RAMP rating decision, the AOJ found that the Veteran has a current diagnosis of obstructive sleep apnea, referring to a September 2017 sleep study from a private provider. The Board is bound by this favorable finding and a present disability is shown. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d).

The remaining question is whether the Veteran’ sleep apnea had onset in service or is otherwise related to service. Initially, the Board notes that the STRs do not document a diagnosis of obstructive sleep apnea. They similarly do not show symptoms commonly attributable to sleep apnea. 

In a December 2017 statement, the Veteran stated that while serving on active duty between February 1977 and June 1979, he started experiencing sleep problems. He described snoring very loudly when sleeping and suffering from major sleep deprivation and insomnia during his service. In a contemporaneous statement, the Veteran’s wife stated that that she had witnessed the Veteran’s constant snoring and problems staying asleep since she and the Veteran were married in May 1980, less than a year after service. She stated that the Veteran’s snoring was accompanied by his breath catching at times, followed by an exhalation all at once, and at times, the Veteran would seem like he was not breathing at all. The Veteran’s wife stated that after many years of discussion, the Veteran had finally decided to undergo a sleep study, in 2017 

In a January 2018 VA examination, an examiner opined that the Veteran’s sleep apnea was less likely than not incurred in or caused by the Veteran’s service, noting that during service, the Veteran’s condition was acute only, and that there was no evidence of chronicity of care and that no nexus had been established. It isn’t clear what acute condition the examiner refers to in the opinion, as the Veteran’s STRs do not document a sleep condition. Additionally, the examiner rendered an opinion without discussing the Veteran and his wife’s lay statements. 

After electing the Supplemental Claim lane in May 2018, the Veteran submitted a private opinion by Dr. RR in June 2018. Dr. RR explained that the Veteran was a patient in the private clinic who had moderate obstructive sleep apnea that was diagnosed in September 2017. Dr. RR opined that it was at least likely as not that the Veteran’s sleep apnea occurred during his military service. Dr. RR based the opinion on the sleep study examination from 2017 as well as the Veteran’s and his wife’s description of the Veteran’s condition within a few months of his release from active duty in 1979. Dr. RR concluded that the Veteran’s condition was chronic, then, as it is now. 

The Board finds that the evidence of record supports a finding that service connection for sleep apnea is warranted as the most probative evidence of record demonstrates that sleep apnea began during service and has existed since that time. Initially, the Board finds the Veteran and his wife’s lay statements competent and credible as such symptoms are capable of lay observation and have been consistent throughout the appeal. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005) (noting that a lay witness is competent to report to factual matters of which he or she has first-hand knowledge); Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, inconsistent statements, consistency with other evidence), aff’d, 78 F.3d 604 (Fed. Cir. 1996).

Furthermore, the Board does not assign any probative value to the negative VA opinion as it does not address the lay statements of record and is unclear, as it referenced an acute condition present in the STRs that does not appear to be present. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (noting that the central issue in determining probative value of a medical opinion is whether the examiner was informed of the relevant facts); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (holding that a medical opinion must be supported by an analysis that the Board can consider and weigh against contrary opinions).

Furthermore, in contrast with the January 2018 VA opinion, Dr. RR’s opinion is supported by an adequate rationale that is based on the competent and credible lay statements submitted by his wife. In addition, the opinion is consistent with the Veteran’s credible lay statements describing sleep difficulties during his military service. This Board thus assigns significant probative value to this opinion. See Nieves-Rodriguez, 22 Vet. App. at 302-04; Stefl, 21 Vet. App. at 124. Therefore, the most probative evidence of record demonstrates that the Veteran’s sleep apnea had onset during service. A nexus is therefore shown, and service connection is warranted. 

 

K. MILLIKAN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Steve Ginski, Associate Counsel