NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL E. HOPE,**
*Claimant-Appellant*

**v.**

**ROBERT L. WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1702

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-3167, Judge Joseph L. Toth.

---

Decided: April 13, 2020

---

J. BRYAN JONES, III, Lake Charles, LA, for claimant-appellant.

ERIN MURDOCK-PARK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; CHRISTINA LYNN GREGG, Y. KEN LEE, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before NEWMAN, O'MALLEY, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Michael Hope served in the United States Army. In 2008, he filed an application with the Department of Veterans Affairs (VA) for disability benefits based on a back condition and a kidney condition. The VA's Board of Veterans' Appeals denied benefits. Although it found that Mr. Hope had been diagnosed with both disability-causing conditions, it found that neither condition was incurred in or caused or aggravated by his military service. The Court of Appeals for Veterans Claims (Veterans Court) affirmed. *Hope v. Wilkie*, No. 17-3167, 2019 WL 360003 (Vet. App. Jan. 30, 2019).

On appeal, Mr. Hope presents a single legal question—which records count, as a matter of law, in applying an exclusion from a presumption of pre-service physical soundness set forth in a regulation implementing a statutory provision. We have jurisdiction to review the legal question Mr. Hope raises. We conclude that the text of the regulation and statute, and the nature of the service induction process, confirmed in the specific circumstances surrounding Mr. Hope's induction into service, require rejection of Mr. Hope's legal contention and support the Veterans Court's interpretation. Therefore, we affirm.

I

Mr. Hope began serving in the Army on September 23, 1969. In January 1969, he had undergone a medical examination for induction into the Army. J.A. 26. The corresponding "report of medical examination," set forth on Standard Form 88 (SF 88), states diagnoses of an asymptomatic "pectus carinatum" (protrusion of the sternum also called "pigeon chest"), mild kyphoscoliosis (abnormal curvature of the spine), and albuminuria (sign of kidney

disease). J.A. 26–27. Stamps on the second page of Mr. Hope's SF 88 note certain results of three later physical inspections—in April, June, and September of 1969. Those stamps on the SF 88 indicate that "[n]o additional defects [were] discovered" during those inspections. J.A. 27. The latter two stamps indicate that Mr. Hope was found "fit" for service. *Id.*

A separate official form, the Defense Department Form 47 (DD 47) from September 1969, is Mr. Hope's "record of induction." That record notes certain details about the June and September inspections. The June 1969 "pre-induction examination" determined that Mr. Hope was "acceptable for induction into the armed forces." J.A. 21. The September 1969 "induction examination," which according to the DD 47 was not a "complete medical examination," affirmed this conclusion. *Id.* The DD 47, referring to the June and September inspections, lists only one of the three diagnoses that had appeared in the January medical-examination report: "severe protrusion of breast plate." J.A. 20.

During his initial physical training, Mr. Hope sought treatment for sharp chest pains and troubled breathing. The record of his visit to an Army medical clinic states that he had been experiencing "trouble [with a] birth defect" and that he had an "extreme deformity" in his chest. J.A. 30. On October 29, 1969, an Army medical evaluation board officially diagnosed Mr. Hope with an "[e]xtreme pigeon breast deformity," noting that the condition had not been caused by an event "incident to service" and had not been "aggravated by active duty." J.A. 28. Although finding that Mr. Hope continued to be "medically fit," the medical board recommended that he be "[r]eturned to duty for separation by reason of erroneous induction." J.A. 28–29. On November 10, 1969, Mr. Hope was discharged from the Army.

Nearly four decades later, on January 4, 2008, Mr. Hope submitted a claim for disability benefits to the VA.

He identified two disabilities: (1) a back disability based on herniated discs, sciatic nerve damage, and arthritis and (2) a disability based on a kidney disease called Bartter's Syndrome. According to Mr. Hope, both disabilities pre-existed his 1969 service but both had been aggravated during basic training. J.A. 24–25. Mr. Hope's doctor submitted a statement confirming the present existence of Mr. Hope's conditions, but saying nothing about the conditions' relation to his 1969 military service. *Id.*

The relevant VA regional office denied Mr. Hope's claims. Although Mr. Hope had established that he was currently suffering from spine- and kidney-related disabilities, the regional office reasoned, he had failed to present evidence that either disability was "incurred in or caused by service." J.A. 24–25.

In May 2017, the Board affirmed the denial. The Board observed that when a "preexisting disorder is noted upon entry into service . . . the veteran may bring a claim for service-connected aggravation of that disorder." J.A. 15 (citing *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004)). But in such a case, the Board stated, "the Veteran has the burden of showing that there was an increase in disability during service." *Id.* Citing Mr. Hope's SF 88, the Board determined that the back and kidney conditions "were clearly noted upon entry into service"—thus, the "burden [wa]s on him to demonstrate an increase in disability during service." J.A. 15–16. The Board found that Mr. Hope had not so demonstrated. It observed that the October 1969 medical clinic and medical examination board reports note nothing about a back or kidney problem. J.A. 16–17. The Board also found that Mr. Hope's "post-service treatment records" do "not reveal any indication these pre-existing back and kidney disabilities were permanently or chronically worsened during or by his service." J.A. 17. The Board therefore denied Mr. Hope benefits for the back and kidney conditions.

Mr. Hope appealed to the Veterans Court. Mr. Hope argued that he was entitled to the statutory presumption of soundness, which states that "[e]ach veteran 'shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment,'" *Hope*, 2019 WL 360003, at *1 (quoting 38 U.S.C. § 1111), and its regulatory counterpart referring to what was "'noted at entrance into service,'" *id.* at *2 (quoting 38 C.F.R. § 3.304(b)). Specifically, Mr. Hope argued that the Board erred in relying on his SF 88, which noted the back and kidney conditions; instead, he contended, the Board should have looked only at his DD 47, which noted the pigeon chest condition but not the back or kidney conditions.

The Veterans Court rejected Mr. Hope's contention, citing 38 C.F.R. § 3.304(b), which provides that "[o]nly such conditions as are recorded in examination reports . . . are to be considered as noted." *Hope*, 2019 WL 360003, at *2. The DD 47, the court explained, "is a personnel record, not a medical record." *Id.* By contrast, the SF 88, which is titled "Report of Medical Examination," "fit[s] the regulatory bill." *Id.* It was therefore proper for the Board to rely on the SF 88 in applying the "noted" exclusion from the presumption. *Id.* In any event, the court briefly added, even if one "accept[ed] Mr. Hope's contention that back and kidney conditions were not noted when he entered service, the presumption of soundness still wouldn't apply here because there is no evidence or assertion of back or kidney problems during his short time in the Army." *Id.* On those bases, as relevant here, the Veterans Court affirmed the Board's denial of benefits.

Mr. Hope timely appealed to this court. We have jurisdiction to consider legal issues raised by the Veterans Court's decision. *See* 38 U.S.C. § 7292(d)(1). We do not have jurisdiction to review "a challenge to a factual

determination" or "a challenge to a law or regulation as applied to the facts of a particular case." *Id.*, § 7292(d)(2).

## II

Mr. Hope's sole argument on appeal is that the Veterans Court misinterpreted 38 C.F.R. § 3.304, the regulation implementing 38 U.S.C. § 1111, which is the statutory provision that establishes the "presumption of sound condition." Specifically, he challenges the Veterans Court's determination that the presumption is inapplicable because pre-entry records disclosed the back and kidney conditions at issue. He argues that the regulation, properly construed, restricts the legally relevant records to the official "record of induction" contemporaneous with entry (here, in September 1969), to the exclusion of the official medical record created in January 1969 (and supplemented three times by September).

That contention presents a legal issue that we have jurisdiction to resolve. *See Shea v. Wilkie*, 926 F.3d 1362, 1367 (Fed. Cir. 2019) ("We have jurisdiction to consider legal issues raised by the Veterans Court's decision, such as whether the Veterans Court misinterpreted [a regulation] and related provisions."). Although the government suggests that we lack jurisdiction to decide Mr. Hope's legal contention because the Veterans Court stated, in one sentence, an independent reason for not applying the presumption, we disagree.

## A

A veteran is entitled to receive compensation for a present disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 1110. To establish a right to compensation, a veteran must present evidence of: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship

between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

A "presumption of sound condition" operates to ease the veteran's evidentiary burden on "the second element required to establish a right to disability compensation—the showing of in-service incurrence or aggravation of a disease or injury." *Holton v. Shinseki*, 557 F.3d 1362, 1367 (Fed. Cir. 2009). In relevant part, 38 U.S.C. § 1111 provides that "every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment." A regulation implementing this statutory directive makes two modifications: (1) it changes the phrase "noted at the time of the examination, acceptance, and enrollment" to "noted at entrance into service" and (2) it adds the requirement that "[o]nly such conditions as are recorded in examination reports are to be considered as noted." 38 C.F.R. § 3.304(b).

The presumption created by the statutory and regulatory provisions does not "relieve the veteran of the burden of showing that the veteran suffered from a disease or injury while in service." *Holton*, 557 F.3d at 1367. If that showing is made, the presumption helps the veteran if it is suggested, in response, that the disease or injury actually arose, and was just as severe, before service. *See Dye v. Mansfield*, 504 F.3d 1289, 1293 (Fed. Cir. 2007) ("The 'presumption of sound condition' addresses the situation where a question arises whether a veteran's medical problems that arose during service existed before he joined the armed forces and, therefore, were not incurred 'in line of duty.'"). Once a veteran has established an in-service disease or injury, the statute and regulation generally place on the VA the burden to show by "clear and unmistakable evidence that the veteran's disability was both preexisting

and not aggravated by service." *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004). But, critical to this case, there is an exception to such burden-shifting stated in the presumption-creating provisions: there is no shifting as to a particular condition that is "noted" in the relevant records "upon entry into service." *Id.*

Mr. Hope challenges the Veterans Court's interpretation of the regulation concerning what records matter for determining whether a particular condition was noted upon entry into service.

## B

Before addressing Mr. Hope's challenge on its merits, the government argues that we do not have jurisdiction to consider it. The government points to the independent, threshold requirement for invoking the presumption—that the veteran "suffered from [the] disease or injury while in service," *Holton*, 557 F.3d at 1367; where that requirement is not met, the presumption is inapplicable without regard to whether the medical conditions at issue were "noted" in certain records upon entrance into service. The government argues that, in this case, there is a factual finding, which we cannot review, establishing conclusively that the threshold requirement is not met, so that the answer to Mr. Hope's legal question about the "noted" exclusion cannot matter, our answer to the question would be advisory, and we lack jurisdiction to consider it. We reject this jurisdictional objection.

The government rests its objection on the Veterans Court's statement that, even "assuming for arguments' sake that the Court were to accept Mr. Hope's contention that back and kidney conditions were not noted when he entered service, the presumption of soundness still wouldn't apply here because there is no evidence or assertion of back or kidney problems during his short time in the Army." *Hope*, 2019 WL 360003, at *2. The government

contends that the Veterans Court, by that statement, upheld a Board finding of fact that back and kidney problems did not "manifest in service." Brief of Appellee at 12. Because it treats the lack of such manifestation in service as meaning that the threshold requirement of the presumption is not met, irrespective of what Mr. Hope's entrance records "noted," the government contends that "for the question raised by Mr. Hope to be implicated, this Court would first have to overturn an unreviewable factual finding." *Id.*

The premise of the government's contention, however, is incorrect. It is not necessary, in order for Mr. Hope to have "suffered from a [back or kidney] disease or injury" during service, *Holton*, 557 F.3d at 1367; 38 U.S.C. § 1110, or for him to have had back or kidney "medical problems that arose during service," *Dye*, 504 F.3d at 1293, that such problems were "manifest" during service. It is hardly an unfamiliar notion in the law governing veterans' disability benefits that a condition can exist, and an injury be service connected, even when symptoms do not manifest themselves until later. *See, e.g.*, 38 U.S.C. § 1112 (for certain diseases, a manifestation of symptoms within a certain period of time after service creates a presumption that the disease was incurred during service); 38 C.F.R. § 3.307 (certain diseases "will be considered to have been incurred in or aggravated by service . . . even though there is no evidence of such disease during the period of service").

At least for that reason, the government has not demonstrated that there is a jurisdictional impediment to our resolution of the legal issue raised by Mr. Hope. We proceed to address that issue.

C

Based on Mr. Hope's SF 88, which notes both "mild ky-phoscoliosis" and "albuminuria," the Board found that "the conditions of a back disability and a kidney disability were clearly noted upon entry into service." J.A. 15–16 (citing J.A. 27). The Veterans Court agreed, citing section 3.304(b)'s requirement that the condition be "noted" on an "examination report[]" and explaining that because the SF 88 "is titled 'Report of Medical Examination,'" it "seems to fit the regulatory bill." *Hope*, 2019 WL 360003, at \*2. Mr. Hope argues that this conclusion was legally erroneous.

Under section 3.304(b), Mr. Hope argues, the only relevant document is the DD 47. Appellant Br. at 8. In support, he contends that the regulation's phrase "noted at entrance into service" imposes a temporal condition requiring that, for a veteran's condition to be "noted," it must appear on a report issued contemporaneously with the veteran's entrance into service. *Id.* Because his service began in September 1969, Mr. Hope contends, the DD 47 is the only report that counts. We disagree.

The phrase on which Mr. Hope relies—"noted at entrance into service"—does not by itself support this construction. The phrase is not limited by any plain meaning to the single day when military service began, but can readily refer to the overall process leading to the formal induction. In a related though distinct context, the Supreme Court long ago explained that "entrance" into service is not a discrete event but a "connected series of steps . . . that begins with registration with the local board [and] does not end until the registrant is accepted by the army, navy, or civilian public service camp." *Falbo v. United States*, 320 U.S. 549, 553 (1944).

In the present setting, Mr. Hope's interpretation, restricting attention to one day and to a non-medical record, is not reasonable. The regulation instructs that "[o]nly

such conditions as are recorded in examination reports are to be considered as noted." 38 C.F.R. § 3.304(b). DD 47 is not an "examination report"—it is a personnel record that catalogs a series of "physical inspections." J.A. 21. And Mr. Hope's DD 47 explicitly notes that the September 1969 "physical inspection" was not a "complete medical examination." *Id.* The regulation, as illustrated by the documents in this case, strongly supports looking outside the DD 47 to the underlying medical examination document, which reflects earlier medical examinations.

The statute implemented by the regulation confirms that "entrance into service" (in the regulation) includes the officially recorded medical examinations that took place as part of the temporally extended process leading to the individual's beginning service. An interpretation of regulatory language "must not be 'unreasonable, unauthorized, or inconsistent' with the underlying statute." *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982) (citing *Ridgway v. Ridgway*, 454 U.S. 46, 57 (1981)). Here, section 1111 specifies that the presumption does not apply when the condition was "noted at the time of the examination, acceptance, and enrollment." 38 U.S.C. § 1111. The statutory phrase suggests contemplation of a series of events over time, all of which are part of the entrance process. And the reference specifically to "examination," reinforced by the regulation's provision on "examination reports," strongly suggests that a veteran's medical examination is part of his "entrance into service."

There is no suggestion that the record in this case is aberrational as to the induction process. The evidence here shows that the physician who performed the September 1969 physical inspection reviewed Mr. Hope's SF 88. The second page of the SF 88 displays three stamps marking "physical inspections" that took place in April 1969, June 1969, and September 1969. J.A. 27. Not only does the document confirm that a full medical examination may be

followed by less comprehensive physical inspections, but it shows that the physician who conducted the September 1969 physical inspection was well aware of the SF 88—making the SF 88 a part of the inspection that was temporally proximate to the beginning of his service and mentioned in the DD 47. Indeed, then-governing Army Regulation No. 601-270, § 69, which described the procedures for a servicemember's "Induction medical examination," reinforces the integrated nature of the multi-stage process. J.A. 51. For a "physical inspection," that regulation specified, the "examining physician will review the previous medical examination reports (SF's 88 and 89)." Army Reg. No. 601-270, § 69(a)(2); J.A. 51.

We conclude that the Veterans Court correctly interpreted 38 C.F.R. § 3.304(b)'s "noted at entrance into service" language to embrace conditions noted in an SF 88 medical report, not just in the DD 47 Record of Induction.

### III

For the foregoing reasons, we affirm the decision of the Veterans Court.

No costs.

**AFFIRMED**