http://www.va.gov/vetapp16/Files3/1621724.txt

Citation Nr: 1621724 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 15-00 557 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia

THE ISSUE

Entitlement to service connection for a bilateral eye disability, claimed as vision loss, to include as secondary to malaria or inactive pulmonary tuberculosis.

REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

S. Gordon, Associate Counsel

INTRODUCTION

The Veteran served on active duty from December 1939 to October 1942.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a November 2013 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia.

Most recently, in December 2014, the Board remanded this matter for further evidentiary development. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDING OF FACT

The Veteran's diagnosed eye disorders, including primary open angle glaucoma (POAG), status post trabeculectomy with mitomycin C (MMC) right eye, status post Argon laser trabeculoplasty (ALT) both eyes, iritis left eye, band keratopathy left eye, glaucoma suspect, and pseudophakia both eyes status post YAG laser capsulotomy both eyes are not shown to be related to military service or service-connected disability.

CONCLUSION OF LAW

The criteria for service connection for an eye disorder, characterized as POAG, status post trabeculectomy with MMC right eye, status post ALT both eyes, iritis left eye, band keratopathy left eye, glaucoma suspect, and pseudophakia both eyes status post YAG laser capsulotomy both eyes (claimed as vision loss), to include as secondary to malaria and service-connected tuberculosis, are not met. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.310 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). In the instant case, VA provided adequate notice in a letter sent to the Veteran in September 2013. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. §3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The evidence of record contains service treatment and personnel records, post service VA and private treatment records, lay statements, and VA examination reports. There is no indication of relevant, outstanding records that would support the Veteran's claim decided herein. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c)(1)-(3).

The Board finds that the December 2015 remand instructions have been substantially met. In addition to obtaining any and all treatment records from the VISTA display imaging system, an addendum opinion was obtained to specifically determine the etiology of the Veteran's current eye disabilities in accordance with the December 2015 Board remand directives. Medical evidence of record is sufficient to decide this appeal.

For the foregoing reasons, the Board concludes that VA's duties to the Veteran have been fulfilled with respect to the issue decided on appeal.

II. Analysis

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. "To establish a right to compensation for a present disability, a veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'-the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Alternatively, service connection may also be established on a secondary basis where a nonservice-connected disability is proximately caused or aggravated by a service-connected disability. 38 C.F.R. § 3.310(a). To establish service connection on a secondary basis, there must be (1) a current disability; (2) a service-connected disability; and (3) evidence that the current disability is proximately caused or aggravated by the service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the claimant. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran seeks service connection for vision loss, to include as secondary to malaria and service-connected tuberculosis; however, for the reasons that follow, the Board concludes that this claim must be denied.

Service treatment records (STRs) are silent for any symptoms, diagnoses, or treatment for an organic eye disorder, vision deficits, or malaria. Visual acuity was noted as 20/20 bilaterally upon an October 1942 physical examination approximately one week before service discharge. There was "no malaria found" following blood testing in October 1942. STRs do show that the Veteran was admitted in July 1942 for treatment of pulmonary tuberculosis. After service discharge, he was admitted to a VA hospital in October 1942 and discharged in July 1943 following treatment of his pulmonary tuberculosis. Physical examination included documentation of 20/20 vision acuity in each eye and fundi without pathology.

Post-service treatment records include private treatment of vision problems from April 2001 to May 2013. Treatment by Dr. D. Lilly noted the Veteran's past ocular history of POAG, and his treatment of the Veteran, to include status post trabeculectomy with MMC right eye, status post ALT both eyes, iritis left eye, band keratopathy left eye, glaucoma suspect, and pseudophakia both eyes status post YAG laser capsulotomy both eyes. 

A July 2005 VA optometry note, by Dr. M. C., shows that the Veteran was seen for a six-month follow-up for his POAG in both eyes with no change in vision reported. An internal examination of the periphery of the eyes revealed scattered chorioretinal scars OD superior and sup/temporal. The assessment was POAG OU with a small increase in IOPs, but within patient's normal range. The Veteran's condition was stable. 

In a September 2013 handwritten statement by the Veteran's wife, she stated that she watched the Veteran's impending blindness cause considerable heartbreak. She described the way in which it impacted the Veteran's activities of daily living. She also stated how they were financially affected by the Veteran's disability.

In a later September 2013 statement by the Veteran's pastor, he described observing how much the Veteran's deteriorating vision affected his ability to function independently. 

A February 2014 private treatment record shows that the Veteran underwent treatment for stability of the macular hemorrhage in the left eye. Due to his exceedingly advanced glaucoma and other ocular issues, there had been no change in his vision noted with the hemorrhage. He was diagnosed with bilateral pseudophakia and open-angle glaucoma.

Pursuant to a June 2015 Board remand, the RO obtained a September 2015 VA opinion to determine the etiology of the Veteran's vision loss. The examiner opined that the Veteran's condition was less likely than not incurred in or caused by the Veteran's claimed in-service injury, event, or illness. She reasoned that in July 1943, it was documented that the Veteran's visual acuity was 20/20 in each eye. The examiner stated that the Veteran's vision was now hand motion in each eye due to visual field loss and band keratopathy from severe primary open angle glaucoma. The examiner indicated that there was no case-based evidence that existed linking primary open angle glaucoma and tuberculosis or malaria.

Pursuant to the most recent December 2015 Board remand, the RO obtained a new VA opinion in March 2016 to determine the etiology of the Veteran's vision loss after the Board deemed the September 2015 VA opinion inadequate. Specifically, the Board found that the September 2015 VA examiner failed to indicate whether the Veteran's eye disability was related to service directly. Moreover, the examiner failed to discuss the etiology of other diagnosed eye conditions such as pseudophakia and iritis and instead focused only on the diagnosis of open-angle glaucoma. Finally, the examiner failed to address whether service-connected tuberculosis aggravated any current eye disability. The Board also acknowledged the need to consider a November 2015 informal hearing presentation (IHP), submitted by the Veteran's representative, on his behalf, which suggested that chorioretinal scars found after service could indicate the presence of choroiditis or chorioretinitis which may be related to tuberculosis. 

The March 2016 VA examiner noted review of the Veteran's STRs, which showed that after leaving military service, the Veteran was admitted to a VA hospital in October 1942 and discharged in July 1943 after treatment of his pulmonary tuberculosis was completed. The examiner noted review of private treatment records by Dr. D. L. who treated the Veteran from April 2001 to May 2013. The examiner concluded that in the 12 years of eye care by Dr. D. L., the Veteran's vision deteriorated from distant visual acuity without correction of 20/60 in both eyes, correctable to 20/50-2 right eye and 20/40 left eye in 2001 to legally blind, count fingers in both eyes due to progression of his POAG despite aggressive treatment. The examiner summarized that the Veteran was hospitalized for pulmonary tuberculosis during his active military service, was discharged unchanged, and hospitalized by the VA after leaving military service until it was determined that treatment of his pulmonary tuberculosis was completed. At the time of hospitalization, his distant visual acuity was 20/20 in each eye and his fundi did not show any pathology. Long after his World War II military service, the Veteran was noted to be a glaucoma suspect with normal intraocular pressure but deep cups and developed POAG with progressive loss of vision to legal blindness and finger counting, despite aggressive treatment. Chorioretinal scars were noted on a VA optometry examination. The examiner cited to a reference article indicating that acute tuberculosis can cause chorioretinitis. However, the examiner pointed out that there was no evidence that the Veteran experienced any signs or symptoms of chorioretinitis when he had pulmonary tuberculosis, and documentation from that timeframe showed normal 20/20 vision in both eyes and fundi free from pathology. The examiner cited to another reference text, which discussed that "the most common infective involvement of the uveal tract is chorioretinitis, in which inflammatory infiltrates are seen in the retina; this infection can lead to destruction of the choroid." Using these references to support his rationale, the examiner concluded that there was no association between pulmonary tuberculosis and the Veteran's POAG. The examiner also cited to multiple references, to include PubMed, and indicated that a PubMed search for pulmonary tuberculosis and glaucoma resulted in "no items found".

The Board finds that service connection for a bilateral eye disability, to include as secondary to service-connected inactive pulmonary tuberculosis is not warranted because the Veteran does not have an eye disability caused or aggravated by active duty service. The evidence shows that neither of the Veteran's bilateral eye disabilities manifested in service or prior to 2001. There is no competent medical evidence of an eye disorder that qualifies as a disability for VA purposes that is shown to be related to service or service-connected disability. The March 2016 VA examiner addressed the Veteran's claim regarding his chorioretinal scars and found that there was "no evidence that the Veteran experienced any signs or symptoms of chorioretinitis when he had pulmonary tuberculosis, and documentation from that timeframe showed normal 20/20 vision in both eyes and was fundi free from pathology." In conclusion, the examiner found that there is no association between pulmonary tuberculosis and POAG. The Board acknowledges that the March 2016 VA examiner does not specifically use the term aggravation, but instead finds there to be "no association" between the Veteran's service-connected pulmonary tuberculosis and his current glaucoma. The Board finds that such language means that there is no link between the Veteran's service-connected tuberculosis and his current eye disabilities. It stands to reason that if there is no link, there is no basis for finding the tuberculosis either caused or aggravated the current glaucoma. This is supported by the 2016 VA examiner's search in PubMed for the terms "pulmonary tuberculosis" and "glaucoma" which resulted in "no items found". Accordingly, the Board finds that the VA examiner provided a definitive opinion that the Veteran's service-connected pulmonary tuberculosis did not cause or aggravate his bilateral eye disability. 

Moreover, the Board has also considered the Veteran's lay statements regarding the medical etiology for any claimed eye problems; however, the Veteran does not possess either the medical training or expertise to opine as to the medical etiology for any claimed eye problems. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). As the causation of an eye disability is not a process that is readily observable by a lay person, the Veteran's belief that his service-connected pulmonary tuberculosis may have caused or aggravated his bilateral eye disability is less probative than the examiner's unfavorable medical opinion. 

Finally, the Board notes that the Veteran has alleged that that he was treated for malaria during service. See November 2014 VA Form 9. He has stated that that malaria is a condition known to affect the vision and that malaria "should be considered as a causal or contributory factor" of his current eye condition. Id. However, because service connection for malaria has not been established, the Veteran's claim of service connection for a bilateral eye disability, to include as due to malaria is not warranted as a matter of law. This is so because there is no legal basis upon which to award service connection for a disability that is claimed as secondary to a disability that is not service connected. See 38 C.F.R. § 3.310.

For all the foregoing reasons, the Board finds that the claim for service connection for an eye disorder must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102, Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Service connection for a bilateral eye disability is denied.

____________________________________________
M. HYLAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs