﻿Citation Nr: 19158996
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 18-26 345
DATE: July 30, 2019

ORDER

Service connection for a low back disability is denied.

Service connection for a left hip disability is denied.

Service connection for a right hip disability is denied.

Service connection for chronic obstructive pulmonary disease (COPD) is denied.

A rating in excess of 10 percent for bilateral hearing loss is denied.

A rating in excess of 10 percent for tinnitus is denied.

The appeal for an effective date earlier than July 28, 2006, for the grant of service connection for hearing loss and assignment of a 10 percent rating is dismissed.

REMANDED

Entitlement to service connection for an acquired psychiatric disorder is remanded.

FINDINGS OF FACT

1. The weight of the evidence is against finding the current low back disability is related to service.

2. The evidence does not show in-service incurrence of hip problems or injury.

3. The evidence does not show any in-service incurrence of COPD or other respiratory problem.

4. There is no valid evidence of hearing values that could combine for a rating in excess of 10 percent.

5. Ten percent is the only available schedular rating for tinnitus, and the Veteran’s report of irritability and other symptoms will be considered with the claim of service connection for an acquired psychiatric disorder.

6. The July 2006 effective date and 10 percent rating for hearing loss were assigned in an unappealed May 2009 rating decision.

CONCLUSIONS OF LAW

1. The criteria for service connection for a low back disability have not been met. 38 U.S.C. § 1131, 5107; 38 C.F.R. § 3.303.

2. The criteria for service connection for a left hip disability have not been met. 38 U.S.C. § 1131, 5107; 38 C.F.R. § 3.303.

3. The criteria for service connection for a right hip disability have not been met. 38 U.S.C. § 1131, 5107; 38 C.F.R. § 3.303.

4. The criteria for service connection for COPD have not been met. 38 U.S.C. § 1131, 5107; 38 C.F.R. § 3.303.

5. The criteria for a rating in excess of 10 percent for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.85-4.86, Diagnostic Code (DC) 6100.

6. The criteria for a rating in excess of 10 percent for tinnitus have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.87, DC 6260.

7. The appeal for an effective date earlier than July 28, 2006, for the grant of service connection for hearing loss and assignment of a 10 percent rating is dismissed. 38 U.S.C. § 7105; Rudd v. Nicholson, 20 Vet. App. 296 (2006); 38 C.F.R. §§ 3.104; 20.202.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the Army from January 1981 to May 1981 and February 1983 to April 1983.

The Board has recharacterized the issue of entitlement to service connection for depression. See Clemons v. Shinseki, 23 Vet. App. 1 (2009).

Service Connection

The Veteran contends his low back, hip, and COPD disabilities are related to his service.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service” – also known as the ‘nexus’ requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010).

The Board must consider all the evidence of record and make appropriate determinations of competence, credibility, and weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). When there is an approximate balance of positive and negative evidence regarding any material issue, all reasonable doubt is resolved in favor of the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

The Veteran is competent to describe symptoms observable to his senses, but he is not competent to diagnose back, hip, or COPD disabilities or determine their cause as this requires specialized medical training. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

1. Service connection for a low back disability

Based on the evidence, the Board finds that the criteria for service connection for a low back disability have not been met. 38 C.F.R. § 3.303.

First, the evidence shows a current low back disability. The February 2015 examiner diagnosed lumbosacral strain and chronic back pain. VA treatment records also show treatment for chronic back pain.

Next, the evidence shows a complaint of back pain in service. Service treatment records from March 1983 document a complaint of back pain for three days and the direction to avoid heavy lifting. There are no other records of back pain or injury. The April 1983 separation examination and report of medical history show no findings or complaints of back, joint, or spine problems. 

Lastly, the weight of the evidence is against finding the current back disability is related to the in-service complaint of back pain. During the April 2015 examination, the Veteran reported injuring his back several times in service while lifting heavy loads and marching long distances; he denied any significant trauma to his back outside of service. The examiner opined that the Veteran’s back disability is less likely than not related to service. The examiner noted the Veteran’s reports of persistently slowly progressive pain on the lower back, injuries only in service, and the onset of constant and noticeable pain in 2008. The examiner further noted the current physical findings of mild limitation of range of motion, mild-to-moderate paralumbar muscle spasms, and no evidence of lumbar HNPs (herniated nucleus pulposus) or lumbosacral osteoarthritis. The examiner concluded that if Veteran’s injuries while in service had proximately caused his current back condition, his evaluations would be expected to show osteoarthritic changes and/or lumbar intervertebral pathology. 

The Board finds the examiner’s opinion is highly probative and outweighs the Veteran’s lay statements, because the examiner explained that the current objective physical findings are inconsistent with an onset during the time of military service. This finding is supported by the Veteran’s report of symptoms being noticeable many years after service. The weight of the evidence is against a nexus to service, and service connection for the Veteran’s low back disability is not warranted. 

2. Service connection for a left hip disability

3. Service connection for a right hip disability

After review of the record, the Board finds the criteria for service connection for hip disabilities have not been met. 38 C.F.R. § 3.303.

The evidence shows current hip disability. VA treatment records show complaints of bilateral hip pain. A July 2011 x-ray report noted degenerative changes in the hips. The evidence does not show an in-service incurrence of hip injury or problems. Service treatment records are silent to hip complaints or injury. The April 1983 separation examination and report of medical history show no findings or complaints of hip or joint problems. The Veteran has also not described a hip injury or onset of hip disability in service. Without an in-service incurrence, service connection for hip disability cannot be established.

4. Service connection for COPD

The Board finds the criteria for service connection for COPD have not been met. 38 C.F.R. § 3.303.

The evidence shows the Veteran has COPD currently. VA treatment records show diagnosis and management of COPD. The evidence does not, however, show incurrence of COPD or other respiratory problems in service. Service treatment records are silent for COPD or other respiratory disability. The April 1983 separation examiner found the Veteran with normal lungs and chest. In his separation report of medical history, the Veteran denied asthma, shortness of breath, chronic cough, and frequent colds. Private treatment records indicate the Veteran was diagnosed with COPD around 2004. 

Additionally, private and VA treatment records show the Veteran continues to smoke ½ to 1 pack of cigarettes per day and has since the age of 18. A May 2006 private treatment note discusses the diagnosis of COPD and the Veteran’s history of working in factory with fumes, chemicals, and irritant gases, which cause severe breathing difficulties. Given that there was no indication of in-service respiratory problems and there are other potential causes of the Veteran’s COPD, the Board finds no evidence to establish in-service incurrence or a relationship to service. Service connection for COPD is not warranted. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and criteria for specific ratings. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the Board must also consider staged ratings, which are appropriate when the evidence establishes that the claimed disability manifested symptoms that would warrant different ratings for distinct time periods during the appeal. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007). 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14.

The Veteran is competent to give evidence of symptoms observable by his senses. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

5. A rating in excess of 10 percent for bilateral hearing loss

The Veteran contends his hearing loss should be rated greater than 10 percent disabling and that he is completely deaf in his right ear.

Disability ratings for hearing loss are assigned based on the results of controlled speech discrimination tests combined with the results of puretone audiometry tests. See 38 C.F.R. §§ 4.85-4.87. An examination for VA rating purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test, specifically, the Maryland CNC test, and a puretone audiometry test. 38 C.F.R. § 4.85(a). Further, disability ratings for hearing impairment are assigned through a structured formula, i.e., a mechanical application of the rating schedule to numeric designations that are assigned after audiometric evaluations have been rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

Under Table VI, a Roman numeral designation of I through XI is assigned for the level of hearing impairment in each ear. Table VI is used to determine a Roman numeral designation based on a combination of the speech discrimination percentage and the average puretone threshold, or the sum of the puretone thresholds at 1000, 2000, 3000, and 4000 Hertz, divided by four. After a Roman numeral designation has been assigned for each ear, Table VII is used to determine the compensation rate by combining such designations for hearing impairment in both ears. 38 C.F.R. § 4.85. If speech discrimination percentages cannot be obtained or the veteran has an exceptional pattern of hearing impairment, Table VIA may be used. See 38 C.F.R. §§ 4.85 and 4.86. 

The record contains insufficient evidence to find the Veteran’s hearing loss disability meets the criteria for a rating in excess of 10 percent. See 38 C.F.R. § 4.85. 

The February 2015 examiner deemed the right ear puretone threshold test results void. The examiner explained this finding by stating that the responses provided by the Veteran were not consistent with the results of a Stenger test performed, and the positive Stenger test provided clinically based evidence that the validity of the Veteran’s reported hearing thresholds in the right ear were highly questionable. The examiner further explained that bone conduction tests are perceived by the better ear – here, the left here – regardless of the placement of the instrument. However, the Veteran only provided responses when the instrument was placed on his left side and had no responses when it was placed on his right mastoid. Finally, the examiner noted the Veteran was able to converse with ease during the course of the appointment, even while his hearing aids were off and the examiner was not facing him, which would not be typical of a person with the level of hearing loss the Veteran reported having. 

The Veteran was scheduled for a second examination to obtain accurate hearing loss test results. The May 2015 examiner also found that test results were not valid for rating purposes. The examiner noted the Veteran was unresponsive to tones below 95-100 decibels but had no problem hearing the examiner prior to testing, without visual cues. The examiner also noted that bone conduction with oscillator on the right mastoid, masked and unmasked SRT was 40 decibels. Therefore, the Veteran’s responses to the toned hearing tests suggested he could not hear anything below 95-100 decibels but with bone conduction, the examiner could “safely say that his pure tone average is some where close to 40 dB” in the right ear.

The Board finds the examiners’ conclusions that the test results were invalid highly probative as they are supported by detailed accounts of the inconsistencies seen on examination. Without accurate puretone threshold results, the Board cannot evaluate the Veteran’s hearing loss disability to determine whether a rating in excess of 10 percent is appropriate. VA made two attempts to obtain accurate results of the Veteran’s hearing loss to no avail. The Board notes that the Veteran has a duty to cooperate with VA in the procurement of evidence on his behalf. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In the August 2018 brief, the Veteran’s attorney discusses the June 2012 audio examination. That examination is outside the rating period and cannot be considered.

The Board has considered the Veteran’s statements that he has difficulty hearing and is deaf in his right ear. The Board has also considered the statement of S.B. that the Veteran has to ask people to repeat themselves, watches the television or listens to the radio so loudly that it is uncomfortable for others, has worse hearing when there are background noises, and has to read lips and ask people to repeat themselves. They are competent to report these symptoms. See Jandreau, 492 F.3d at 1377. Nevertheless, VA’s rating of hearing impairment is based on specific measurements that must be gathered by a state-licensed audiologist using specific tests, and symptoms of difficulty hearing others have been found to be contemplated by the rating schedule for hearing loss. See Doucette v. Shulkin, 28 Vet. App. 366, 368-69 (2017) (holding that “the rating criteria for hearing loss contemplate functional effects of decreased hearing and difficulty understanding speech in an everyday work environment”—which “are precisely the effects that VA’s audiometric tests are designed to measure”). In this case, the results of the required tests could not be gathered with a degree of accuracy deemed appropriate by the medical professionals. 

The criteria for a rating in excess of 10 percent for hearing loss have not been met. 

6. A rating in excess of 10 percent for tinnitus

A 10 percent rating is the only schedular rating available for tinnitus. 38 C.F.R. § 4.87, DC 6260. During the May 2015 examination, the Veteran reported that his tinnitus made him irritable and want to run his head in the wall. The question of whether the Veteran’s tinnitus caused a mental health disability or aggravated mental health symptoms is encompassed by the remand for service connection for an acquired psychiatric disorder. The Veteran has reported no other symptoms aside from difficulty hearing. As noted above, the rating schedule for hearing loss has been found to contemplate difficulty hearing others; a separate rating for this symptom under tinnitus would constitute pyramiding. Thus, a rating in excess of 10 percent for tinnitus is not appropriate. See 38 C.F.R. § 4.87, DC 6260.

Effective Date

7. An effective date earlier than July 28, 2006, for the grant of service connection for hearing loss and assignment of a 10 percent rating

A May 2009 rating decision granted service connection for hearing loss with a 10 percent rating and an effective date of July 29, 2006. The Veteran did not appeal that decision within one year, and it became final. See 38 C.F.R. §§ 3.104; 20.202. In a May 2018 rating decision, the Regional Office found clear and unmistakable error (CUE) in the May 2009 decision and revised the effective date by one day to July 28, 2006. Aside from an additional finding of CUE, the May 2009 decision is final. See 38 C.F.R. § 3.105(a).

The Court has held that there can be no freestanding claim for an earlier effective date; meaning, the question of an earlier effective date can only be raised as an appeal of the underlying grant of benefits. See Rudd v. Nicholson, 20 Vet. App. 296, 299 (2006). The current appeal is a freestanding claim for an earlier effective subject to the Court’s holding in Rudd. Therefore, the appeal is dismissed as a matter of law. See id. at 300.

REASONS FOR REMAND

1. Entitlement to service connection for an acquired psychiatric disorder is remanded.

In the August 2018 brief, the Veteran’s attorney asserts the Veteran is entitled to service connection for major depressive disorder. In support of the claim, they provided statements from the Veteran’s brother and sister discussing the changes in mood and behavior they observed in the Veteran when he returned from service. The attorney also pointed to the April 1983 separation report of medical history to evidence the Veteran reporting attempted suicide and being a sleepwalker. The Board notes that the marks for all five items in this section of the form begin in the “yes” column and end in the “no” column. The other items include “lived with anyone who had tuberculosis,” “coughed up blood,” and “bled excessively after injury or tooth extraction.” These items carry a great deal of seriousness and potential risk to life, yet there is no evidence that follow-up was done. Additionally, there are no other notations in service treatment records of any sort of sleep disturbance or mental health symptoms.

The Veteran’s attorney also provided a medical opinion concluding that the Veteran’s major depressive disorder more likely than not began in service and was permanently aggravated by his service-connected tinnitus, hearing loss, erectile dysfunction, and residuals of varicocele. The provider cited to the evidence and general medical research about mental health within active duty servicemen, tinnitus and hearing loss being strong predictors of mental illness, and how one-third of veterans will suffer from psychiatric disorder. The provider did not, however, relate the general studies to the Veteran’s specific circumstances or explain how the evidence demonstrates a connection to service or service-connected disabilities. The opinion is therefore inadequate. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (a medical opinion must support its conclusion with analysis that the Board can consider and weigh against contrary evidence).

A VA medical opinion should be obtained to address whether the Veteran’s current mental health disabilities are related to service or service-connected disabilities. 

The matter is REMANDED for the following action:

1. Obtain and associate with the claims file any outstanding VA treatment records.

2. Then, obtain a mental health examination and opinion. The examiner should review the evidence and address the following:

a. Are any of the Veteran’s current mental health disabilities at least as likely as not related to his service, including having onset during service?

b. Are any of the Veteran’s current mental health disabilities at least as likely as not caused by his hearing loss, tinnitus, and/or residuals of varicocele with erectile dysfunction?

c. Were any of the Veteran’s current mental health disabilities at least as likely as not aggravated (worsened) by his hearing loss, tinnitus, and/or residuals of varicocele with erectile dysfunction? If aggravation is found, provide a baseline level of disability prior to aggravation.

Consider all lay and medical evidence, including the Veteran’s siblings’ statements of mood and behavioral changes observed during service, the July 2018 private opinion and list of research, and the Veteran’s report that his tinnitus causes irritability and a want to run his head in the wall.

All opinions must be supported by detailed rationale. If the opinion cannot be provided without resort to speculation, the examiner should explain why, and state whether the inability is due to the absence of evidence or limits of scientific/medical knowledge.

 

REBECCA N. POULSON

Acting Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A.P. Armstrong

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.