﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190311-9354
DATE: October 31, 2019

ORDER

Entitlement to service connection for headaches as due to an undiagnosed illness, or as secondary to PTSD, with major depressive disorder, is denied.

Entitlement to service connection for hypertension as due to an undiagnosed illness or as secondary to PTSD, with major depressive disorder, is denied.

Entitlement to service connection for a lower back disability, also claimed as fibromyalgia, as due to an undiagnosed illness is denied.

Entitlement to service connection for a stomach condition with reoccurring nausea and diarrhea, claimed as IBS, is denied.

Entitlement to an initial rating in excess of 50 percent for post-traumatic stress disorder (PTSD) is denied.

FINDINGS OF FACT

1. The Veteran had active service in the Southwest Asia Theater of operations. 

2. A chronic disability manifested by headaches was not manifest during active service; and, the preponderance of the evidence fails to establish that a present disability is etiologically related to service, including as a result of service in Southwest Asia. 

3. Hypertension was not shown to have manifested during active military service, and the Veteran’s current hypertension is not etiologically related to such service, to include as due an undiagnosed illness. 

4. A disorder characterized by chronic low back pain is not shown to have been present in service, or for many years thereafter, nor is it shown to be related to service, nor is it shown to be a manifestation of an undiagnosed illness. 

5. The Veteran's currently diagnosed gastrointestinal disorder, including IBS, did not have onset during active service, did not manifest within one year of separation from active service, and was not caused by his active service, nor is it shown to be secondary to service-connected PTSD. 

6. The Veteran's PTSD has been manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as: depressed mood, anxiety, chronic sleep impairment, mild memory loss, impaired judgment, disturbance of motivation and mood, difficulty in establishing and maintaining relationships, but has not been manifested by deficiencies in most areas or by total social and occupational impairment. 

CONCLUSIONS OF LAW

1. The criteria for service connection for headaches, to include as due to an undiagnosed illness, have not been met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317. 

2. The criteria for service connection for hypertension, to include as due to an undiagnosed illness, have not been met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317. 

3. The criteria for service connection for a low back disability, also claimed as fibromyalgia, to include as due to an undiagnosed illness have not been met. 38 U.S.C. §§ 1110, 1117, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.317. 

4. The criteria for service connection for a stomach disorder, including IBS, to include as a symptom of an undiagnosed illness or secondary to service-connected PTSD, have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1117, 1131; 38 C.F.R. §§ 3.303, 3.310, 3.317. 

5. The criteria for a rating in excess of 50 percent for post-traumatic stress disorder (PTSD) have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.130, Diagnostic Code 9411. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board of Veterans’ Appeals (Board) is honoring the Veteran’s choice to participate in VA’s test program, the Rapid Appeals Modernization Program (RAMP). 

The Veteran, who served on active duty from August 1989 to August 1992, selected the Higher-Level Review lane when she submitted a RAMP election form on October 16, 2018. Accordingly, a January 2019 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). As a result of the direct election, only evidence of record at the time of the January 2019 rating decision will be considered. 

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (a) (2018). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection will be presumed for certain chronic diseases, including arthritis, if they were manifest to a compensable degree within the year after active service. 38 U.S.C. §§ 1101, 1112, 1113 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2018). 

For a showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. If the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b) (2018). 

Furthermore, compensation may be granted for disability due to undiagnosed illness of a Veteran who served in the Southwest Asia Theater of operations during the Persian Gulf War. 38 U.S.C. § 1117. 

During the pendency of this appeal, Congress revised 38 U.S.C. § 1117, effective March 1, 2002. In the revised statute, the term "chronic disability" was changed to "qualifying chronic disability," and the definition of "qualifying chronic disability" was expanded to include (a) undiagnosed illness, (b) a medically unexplained chronic multi-symptom illness, to include chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome, that is defined by a cluster of signs or symptoms, or (c) any diagnosed illness that the Secretary determines, in regulations, warrants a presumption of service connection. Effective June 10, 2003, VA promulgated revised regulations to, in part, implement these statutory changes. See 38 C.F.R. § 3.317 (a)(2). 

Under 38 U.S.C. § 1117 (a)(1), as amended, compensation is warranted for a Persian Gulf veteran who exhibits objective indications of a "qualifying chronic disability" that became manifest during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent during the presumptive period prescribed by the Secretary. The period within which such disabilities must become manifest to a compensable degree in order for entitlement to compensation to be established is currently December 31, 2016. See 38 C.F.R. § 3.317 (a)(1)(i). In order to qualify, the chronic disability must not be attributed to any known clinical disease by history, physical examination, or laboratory tests. 38 U.S.C. § 1117; 38 C.F.R. § 3.317 (a), (b). 

The term "objective indications of a qualifying chronic disability" includes both "signs," in a medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317 (a)(3). Signs or symptoms that may be manifestations of undiagnosed illness or a chronic multi-symptom illness include the following: fatigue, unexplained rashes or other dermatological signs or symptoms, headache, muscle pain, joint pain, neurological signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the upper or lower respiratory system, sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders. 38 U.S.C. § 1117 (g). 

The term "medically unexplained chronic multi symptom illness" means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multi symptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317 (a)(2)(ii). Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. The six-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317 (a)(4). 

The Veteran can provide competent reports of factual matters of which he has first-hand knowledge, such as experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition (noting that sometimes the lay person will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Similarly, laypersons are competent to diagnose and provide nexus opinions to some extent, notably where the diagnosis or opinion is not of a complex nature. Id. see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. 

1. Entitlement to service connection for headaches as due to an undiagnosed illness, or as secondary to PTSD

2. Entitlement to service connection for hypertension as due to an undiagnosed illness or as secondary to PTSD

The Veteran maintains that he developed headaches and hypertension as a result of military service. He also contends that his headaches and hypertension are secondary to an environmental hazard from the Gulf War as well as his service-connected PTSD. 

With respect to the first element of service connection, a current disability, the Veteran has a current diagnosis of headaches. Significantly, following an August 2015 DBQ examination, the examiner confirmed that the Veteran has a current diagnosis of headaches, with its onset in 2011. Similarly, VA progress notes reflect diagnoses of hypertension. Specifically, a VA annual evaluation note, dated June 14, 2016, reported an assessment of hypertension, controlled with medication. Thus, element one is satisfied. 

The Veteran's personnel records, to include his DD-214, confirm service in the Southwest Asia theater of operations. His service treatment records are negative for any complaints, treatment, or diagnoses of headaches, including migraine headaches and cluster headaches; they are also negative for any finding of hypertension. Indeed, his May 1989 enlistment examination does not identify any headache conditions or headache symptoms. Further, he declared good health and denied any health condition for that examination. The June 1992 separation examination was also negative for any complaints or findings of a headache disorder; blood pressure reading was 100/50. As such, the Board finds that the evidence of record does not demonstrate the claimed headache condition or hypertension was incurred in service. 

The Veteran also contends that his headache disability and hypertension are due to his service during the Gulf War. Although the Veteran does have service during the Gulf War, the Board notes that hypertension is not a qualifying chronic disease under 38 C.F.R. § 3.317. 

There are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi symptom illness; and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117 (d) (long term health effects potentially associated with infectious diseases) warrants a presumption of service-connection. Here, the Veteran’s has a diagnosed illness, headaches. Additionally, the Veteran’s headache disability is not a medically unexplained chronic multi-symptom illness as the Veteran’s headaches are not without conclusive pathophysiology or etiology that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Furthermore, in an August 2015 VA Gulf War examination report, the VA examiner stated that there was no credible medical authority or peer reviewed study that has confirmed a link between Southwest Asia service and the claimed disabilities, including headaches and hypertension. Thus, the Veteran is not entitled to presumptive service connection for headaches as an undiagnosed illness due to his service in the Gulf War. 

3. Entitlement to service connection for a lower back disability as due to an undiagnosed illness 

The Veteran maintains that his claimed low back disorder is due partly to his service in Southwest Asia. The Veteran maintains that as an Abrams Tank Turret mechanic, he was required to spend 12 to 14 hours on transport; and, on one occasion, he was getting into the driver’s hatch and popped his back. The Veteran indicated that medical assistance was not available; he simply took large doses of Ibuprofen and laid on a cot for a week. The Veteran maintains that he now suffers from degenerative disease as a result of that old injury in service. 

In this regard, following the August 2015 Gulf War Illness examination, the examiner stated that the Veteran’s complaints of back pain and joint pain are related to degenerative changes and musculoskeletal deconditioning as well as his diagnosis of gout. Moreover, a CT scan report in September 2015 noted a finding of bilateral pars defects of L5 with anterolisthesis of L5 on S1. As this is a known clinical diagnosis, service connection is not warranted based on having an undiagnosed illness. This does not preclude consideration of the Veteran's claim on a direct causation basis. 

After review of the evidence, the Board finds that service connection is not warranted for chronic low back pain, claimed as fibromyalgia. Significantly, the service treatment records (STRs), including the May 1989 enlistment examination as well as the June 1992 separation examination, are silent with respect to any complaints or findings of a chronic low back disorder during the Veteran's period of military service. 

The first clinical documentation of the onset of a chronic low back disorder is dated in May 2011, more than 19 years after service separation from his period of military service. (A significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim. See generally Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000).) 

Other than the Veteran's assertions, there is no evidence indicating that there is a relationship between the Veteran's current low back disorder and military service. Following the DBQ/VA examination in August 2015, the examiner reviewed the medical records and offered his opinion that the Veteran's reported joint pains and muscle cramps are at least as likely as not related to normal age-related degenerative changes and musculoskeletal deconditioning, as well as his diagnosis of gout. Consequently, the medical opinion evidence is against the claim. 

The Board acknowledges the Veteran's contention that he has a current low back disorder that is related to his active military service. However, the Board finds the post service medical evidence to be more probative on the nexus question. Therefore, the appeal as to this issue must be denied. There is no reasonable doubt to be resolved as to this claim. 

4. Entitlement to service connection for a stomach disorder, including IBS, as due to an undiagnosed illness.

The Veteran contends that her gastrointestinal disorder (GI), currently diagnosed as irritable bowel syndrome (IBS) is directly related to service in Southwest Asia. While the August 2015 Gulf War examination indicated that the Veteran does not have a diagnosed intestinal condition, subsequent VA treatment records, including a VA clinic note dated June 14, 2016, report a diagnosis of IBS. As this is a known clinical diagnosis, service connection is not warranted based on having an undiagnosed illness. This does not preclude consideration of the Veteran's claim on a direct causation basis. 

After review of the evidence, the Board finds that service connection is not warranted for a GI disorder, currently diagnosed as IBS. Significantly, the STRs are negative for any clinical findings or diagnosis of a GI disorder, including IBS, during the Veteran's period of military service. 

Moreover, there is no probative evidence of a nexus between the Veteran's current diagnosis of a GI disorder and her active service, including service in Southwest Asia. The record in this case is negative for any indication, other than the Veteran's own lay assertions, that her current GI disorder, including IBS, is due to service. Significantly, following the DBQ examination in August 2015, the examiner opined that the Veteran's digestive conditions are not due to his Southwest Asia service. 

The Board acknowledges the Veteran's contention that he has a current GI disorder, including IBS, that is related to his active military service. However, the Board finds the post service medical evidence to be more probative on the nexus question. Therefore, the appeal as to this issue must be denied. There is no reasonable doubt to be resolved as to this claim. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. 

4. Entitlement to an initial rating in excess of 50 percent for post-traumatic stress disorder (PTSD)

The Veteran essentially contends that the symptoms of his service-connected PTSD are more disabling than reflected by the currently assigned rating. 

The Veteran's service-connected PTSD is currently evaluated as 50 percent disabling under Diagnostic Code 9411 (2018). A rating of 50 percent is assigned where the claimant exhibits occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-term or long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A rating of 70 percent is assigned where the claimant exhibits occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain successful relationships. 

A rating of 100 percent is assigned where the claimant exhibits total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126 (a). The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. The rating agency shall also consider the extent of social impairment, but not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126 (b). 

Moreover, the list of symptoms under the rating criteria is meant to be examples of the symptoms that would warrant the evaluation, but they are not meant to be exhaustive. Mauerhan v. Principi, 16 Vet. App. 436 (2002). The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms, and that a veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). 

Significantly, in conjunction with his claim, the Veteran was afforded a DBQ examination in August 2015. The Veteran reported depressive and anxious symptoms related to his military service and his home life. He reported having depressed mood, difficulty staying asleep, poor appetite, difficulty with concentration, and being fidgety. He also reported difficulty with worry, anxiety, difficult relaxing, irritability and feeling like the worse is going to happen. The Veteran also reported having daily intrusive thoughts and difficulty sleeping. The Veteran indicated that he had periods of sadness that lasts several days. He was presently not taking any psychiatric medication and has not participated in any mental health treatment. The examiner noted that the Veteran’s PTSD was manifested by anxiety and chronic sleep impairment. The Veteran denied suicidal and homicidal ideations at present. He reported having concentration problems. He denied any past and current audio-visual hallucinations. He had no evidence of delusional thought processes and the Veteran denied history of delusional thoughts. The examiner indicated that the Veteran’s PTSD resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. 

More recently, the Veteran was afforded another DBQ examination in July 2016. At that time, the Veteran noted that he has become more dependent upon his wife. It was noted that he had diminished social interaction. The examiner noted that the Veteran began seeking mental health treatment. The examiner noted that the Veteran’s PTSD resulted in occupational and social impairment with reduced reliability and productivity. The examiner noted that the Veteran’s PTSD was manifested by symptoms that include depressed mood, anxiety, chronic sleep impairment, mild memory loss, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, and inability to establish and maintain effective relationships. 

After review of the evidentiary record, the Board finds that the criteria are not met for a rating in excess of 50 percent for PTSD. Significantly, the Board finds that the Veteran's PTSD symptoms established by the evidence of record are not the equivalent in severity to those associated with a 70 percent disability rating causing problems such as deficiencies in most areas. In this regard, the Board finds that the evidence shows that the Veteran has chronic sleep disturbance, intrusive thoughts, depression, anxiety, disturbances in motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. However, the Veteran did not report any hallucinations or delusions; there was also no report of any suicidal or homicidal ideations or thoughts, or any obsessive or compulsive behaviors. 

(Continued on the next page)

 

In light of the foregoing, the Board finds that the evidence of record is devoid of any report of symptoms of the same frequency and severity as illogical or irrelevant speech. There was also no evidence of any symptoms such as thought disorder, psychosis, obsessional rituals, near-continuous panic, impaired intellectual functioning, or impaired judgment of the severity, frequency, and duration contemplated in the higher ratings. Thus, the Board finds that the evidence does not show that the Veteran's PTSD symptoms are of such severity to warrant a rating of 70 percent or higher. Again, no examiner who evaluated the Veteran during this part of the appeal period concluded that the Veteran's PTSD symptoms resulted in deficiencies in most areas such as work, school, family relations, judgment, thinking and/or mood. Rather, the August 2015 examiner stated that the Veteran's PTSD resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. In light of the above clinical findings, and the examiner’s description of the Veteran’s PTSD symptomatology, the Board finds that the Veteran’s disability is characteristic of pertinent disability criteria warranting no more than the currently assigned 50 percent rating. As the preponderance of the evidence is against this claim, the benefit-of-the-doubt doctrine does not apply, and the claim for an initial rating in excess of 70 percent 

(continued on next page)

for PTSD must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Additionally, the record does not show an unusual or exceptional disability picture not contemplated by the regular schedular criteria so referral for extraschedular consideration is not warranted.

 

JAMES G. REINHART

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Department of Veterans Affairs

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.