﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 190814-39780
DATE: September 30, 2020

ORDER

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for dementia is denied.

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for dysphasia is denied.

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for neuropathy is denied.

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for left foot amputation is denied.

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for right leg above knee amputation is denied.

REMANDED

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), is remanded.

FINDINGS OF FACT

1. The preponderance of the evidence is against finding that dementia began during active service, or is otherwise related to an in-service injury or disease.

2. The preponderance of the evidence is against finding that dysphagia began during active service, or is otherwise related to an in-service injury or disease.

3. The preponderance of the evidence of record is against finding that the Veteran has had neuropathy at any time during or approximate to the pendency of the claim.

4. The Veteran’s left foot amputation is not secondary to service-connected disability, and is not otherwise related to an in-service injury or disease.

5. The Veteran’s right above knee amputation is not secondary to service-connected disability, and is not otherwise related to an in-service injury or disease.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for treatment purposes only under 38 U.S.C. chapter 17 for dementia have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.360, 3.655.

2. The criteria for entitlement to service connection for treatment purposes only under 38 U.S.C. chapter 17 for dysphasia have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.360, 3.655.

3. The criteria for entitlement to service connection for treatment purposes only under 38 U.S.C. chapter 17 for neuropathy have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.360, 3.655.

4. The criteria for entitlement to service connection for treatment purposes only under 38 U.S.C. chapter 17 for left foot amputation have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.360, 3.655.

5. The criteria for entitlement to service connection for treatment purposes only under 38 U.S.C. chapter 17 for right above knee amputation have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.360, 3.655.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran timely appealed a March 2019 rating decision and elected the Evidence review docket when he appealed to the Board. See VA Form 10182 received August 14, 2019. The Board may therefore consider evidence of record as of the March 2019 rating decision and any evidence submitted within 90 days of the August 2019 election; that is, by November 14, 2019.

The Veteran served on active duty from December 1969 to May 1971. His DD 214 shows that he had service in the Republic of Vietnam, his type of transfer or discharge was Discharged, and his character of service was Under Conditions Other than Honorable. A June 2015 VA rating decision/administrative decision/formal finding reflects that the Veteran's period of service from December 1969 to May 1971 was dishonorable for VA purposes, and the Veteran was entitled to health care. 

The healthcare and related benefits authorized by Chapter 17 of Title 38 of the United States Code shall be provided to certain former service persons with administrative discharges under other than honorable conditions for any disability incurred or aggravated during active military, naval, or air service in line of duty. 38 C.F.R. § 3.360(a).

With certain exceptions, such benefits shall be furnished for any disability incurred or aggravated during a period of service terminated by a discharge under other than honorable conditions. Specifically, they may not be furnished for any disability incurred or aggravated during a period of service terminated by a bad conduct discharge or when one of the bars listed in § 3.12(c) apply. 38 C.F.R. § 3.360(b). In making determinations of health-care eligibility the same criteria will be used as is now applicable to determinations of service incurrence and in line of duty when there is no character of discharge bar. 38 C.F.R. § 3.360(c).

As the Veteran was discharged under other than honorable conditions, the health-care and related benefits are authorized under Chapter 17 of Title 38 of the United States Code according to the service connection criteria that would otherwise apply.

With respect to each claim on appeal, the Veteran asserts that each disability is due to exposure to Agent Orange while he was stationed in Vietnam. He also asserts that his amputations are in the alternative secondary to diabetes mellitus. See December 2018 VA Form 21-526EZ. 

Service connection, including service connection for treatment purposes only, will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303 (a), 3.360(c). Establishing service connection generally requires competent evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F. 3d 1362 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (a).

1. Service connection for treatment purposes only under 38 U.S.C. chapter 17 for dementia.

2. Service connection for treatment purposes only under 38 U.S.C. chapter 17 for dysphasia.

The Veteran contends that his dementia and dysphasia are due to his exposure to herbicides in service. The Veteran has current diagnoses of dementia and dysphasia, as evidenced by private treatment records dated in February 2017 and August 2018. 

As the Veteran served in the Republic of Vietnam, exposure to herbicides is presumed. 38 C.F.R. § 3.307. However, dementia and dysphasia are not disabilities for which presumptive service connection is warranted based on exposure to herbicides. 38 C.F.R. § 3.309 (e). Accordingly, they may not be presumed related to the Veteran’s service. 

Service connection for dementia and dysphasia, for treatment purposes only, may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran’s dementia and dysphasia and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303. 

The Veteran’s service treatment records are negative for complaints, symptoms, findings or diagnoses related to dementia or dysphasia and neither were shown for many decades after the Veteran’s separation from service. A significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim. Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000).

The record contains no medical evidence or medical opinion linking the Veteran's dementia or dysphasia to his active duty or exposure to herbicides during active duty. 

While the Veteran generally believes his dementia and dysphasia are related to exposure to herbicide during active duty, the diagnosis and etiology of the disabilities is outside the realm of common knowledge of a lay person because it involves complex medical issues that go beyond a simple and immediately observable cause-and-effect relationship. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The record includes no competent evidence in support of the claim that the Veteran’s dementia or dysphasia are related to service or may be associated with his service. 

In conclusion, the Board finds that the preponderance of the evidence is against the claims for service connection for treatment purposes only under 38 U.S.C. chapter 17 for dementia and dysphasia. In denying the claims, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

3. Service connection for treatment purposes only under 38 U.S.C. chapter 17 for neuropathy.

The Veteran contends that he has neuropathy due to his exposure to herbicides in service. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have a current diagnosis of neuropathy and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

A February 2019 VA Diabetic Sensory-Motor Peripheral Neuropathy Disability Benefits Questionnaire (DBQ) provides that there was no diagnosis because there was no pathology to render a diagnosis. The Veteran reported that the symptoms resolved with amputation of limbs. The Veteran’s current symptoms were related to amputation. A February 2019 Amputations DBQ by the same VA examiner provides that the Veteran underwent amputations in 2014.

While the Veteran believes he has neuropathy, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education and the ability to interpret physical findings and complicated diagnostic medical testing. See Kahana v. Shinseki, 24 Vet. App. at 428; Jandreau, 492 F.3d at 1372. Consequently, the Board finds that the preponderance of the evidence is against finding that the Veteran currently has neuropathy or has had it at any time during the pendency of the claim or recent to the filing of the claim. Without competent evidence of current disability, the Board finds that service connection for treatment purposes only is not warranted.

4. Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for left foot amputation.

5. Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for right leg above knee amputation.

The Veteran contends that his amputations are due to his exposure to herbicides in service or his diabetes mellitus, type 2. A February 2019 Amputations DBQ notes that the Veteran underwent the amputations in 2014. 

As the Veteran served in the Republic of Vietnam, exposure to herbicides is presumed. 38 C.F.R. § 3.307. However, amputation is not a disability for which presumptive service connection is warranted based on exposure to herbicides. 38 C.F.R. § 3.309 (e). Accordingly, the amputations may not be presumed related to the Veteran’s service.

In addition to the law set forth above, service connection may be granted for a disability that is proximately due to, or aggravated by, service-connected disease or injury. 38 C.F.R. § 3.310. 

In this case, a February 2019 VA DBQ medical opinion relates that the Veteran’s left foot amputation was less likely than not due to diabetes mellitus. It was more likely that the Veteran’s peripheral vascular disease was the etiology of his left foot amputation. The medical opinion does not address the etiology of the Veteran’s right leg amputation, which appears to be an oversight. As the Veteran is not service-connected for peripheral vascular disease, service connection for treatment purposes for left foot amputation secondary to peripheral vascular disease must be denied. Id. 

The record contains no medical evidence that either amputation is secondary to diabetes mellitus, type 2. 

While the Veteran generally believes his amputations are secondary to diabetes mellitus, type 2, he is not competent to provide a nexus opinion in this case. This issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau, supra. 

Service connection for amputations may still be granted on a direct basis; however, the preponderance of the evidence is against finding that a medical nexus exists between the Veteran’s amputations and an in-service injury, event or disease. 38 U.S.C. §§ 1110, 1131; Holton, supra; 38 C.F.R. § 3.303. 

The Veteran’s service treatment records are negative for complaints, symptoms, findings or diagnoses related to his amputations. The amputations occurred many decades after the Veteran’s separation from service. A significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim. Maxson, supra.

The record contains no medical evidence or medical opinion linking the Veteran's amputations to his active duty or exposure to herbicides during active duty. 

While the Veteran generally believes his amputations are related to exposure to herbicide during active duty, he is not competent to provide a nexus opinion in this case. This issue is medically complex, as it requires specialized medical education and the ability to interpret complicated diagnostic medical testing. Jandreau, supra. 

The Veteran has provided no competent evidence in support of his claim that his amputations are attributable to service, and although he has not been afforded an examination in connection with his claims, VA does not have a duty to provide one here as there is no competent indication that either of the conditions may be associated with the Veteran’s service. 38 C.F.R. § 3.159 (c)(4).

In conclusion, the Board finds that the preponderance of the evidence is against the Veteran’s claims for service connection for treatment purposes only under 38 U.S.C. chapter 17 for left foot amputation and right leg above knee amputation. In denying the claims, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7.

REASONS FOR REMAND

Service connection for treatment purposes only under 38 U.S.C. Chapter 17 for an acquired psychiatric disorder, to include PTSD, is remanded.

The Veteran’s December 2018 claim specifically identified major depressive disorder, but the record includes diagnoses of anxiety and PTSD and his March 2015 statement referencing PTSD and dreams of experiences in Vietnam. Thus, the psychiatric claim on appeal is characterized broadly. Clemons v. Shinseki, 23 Vet. App. 1 (2009).

Medical evidence submitted with the VA Form 10182 received in August 2019 includes private psychiatric treatment records that include diagnoses of PTSD, major depressive disorder and anxiety. In references to PTSD, the providers note the Veteran’s report that he experiences flash-backs and dreams related to his Vietnam service. In the March 2019 rating decision, the AOJ denied the claim because there was no current diagnosis of record. Evidence at that time did include a diagnosis of major depressive disorder and the Veteran’s March 2015 statement about having PTSD related to his Vietnam service. Evidence submitted since that time, which is reviewable as part of this appeal, includes several psychiatric diagnoses, including PTSD. 

The claim is remanded to correct a pre-decisional duty to assist error; specifically, the Veteran must be afforded a VA examination to determine the nature and likely etiology of any diagnosed psychiatric disability. 

The matters are REMANDED for the following action:

Schedule the Veteran for a VA examination (or telehealth interview, review of the record, etc., if an in-person examination is not feasible) with an appropriate clinician to determine the nature and likely etiology of any diagnosed psychiatric disability. Copies of all pertinent records must be made available to the examiner for review. 

Based on the examination and review of the record the examiner must answer the following: 

(a) Identify all diagnosed psychiatric disabilities of record since March 2015.

(b) If PTSD is diagnosed, is it at least as likely as not (i.e., probability of 50 percent or more) that it is related to service? In answering this, the examiner must specifically identify the stressor relied upon.

(c) For any psychiatric diagnosis other than PTSD, is it at least as likely as not (i.e., probability of 50 percent or more) that the disability had its onset in service or is otherwise related to the Veteran's service?

A complete rationale must be provided for all opinions, citing to supporting factual data and medical literature, as appropriate. If the examiner cannot provide an opinion without resort to speculation, the examiner must state why.

 

M.E. Larkin

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Davitian, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.